529 N.W.2d 330 (1995)
Michele NEAL, Respondent,
v.
STATE FARM MUTUAL INSURANCE COMPANY, Petitioner, Appellant.
No. C4-93-647.
Supreme Court of Minnesota.
March 10, 1995.
*331 William M. Hart, Joseph W.E. Schmitt, Meagher & Geer, Minneapolis, and Bradley T. Cosgriff, Hopkins, for appellant.
Mark E. Gilbert, Kalina, Wills, Woods, Gisvold & Clark, Minneapolis, for respondent.
Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for amicus curiae Ins. Federation of MN.
Mary C. Cade, Schwebel, Goetz & Sieben, Minneapolis, for amicus curiae MN Trial Lawyers Ass'n.
Heard, considered and decided by the court en banc.

OPINION
TOMLJANOVICH, Justice.
Plaintiff Michele Neal was injured in an automobile accident on October 15, 1989. She received emergency medical attention and then continued with chiropractic treatment. State Farm Mutual Insurance Company provided personal injury protection (PIP) coverage. After Neal had completed nine months of treatment, State Farm notified her that it had scheduled an independent medical examination (IME) to determine whether ongoing chiropractic care was reasonable and necessary. Neal declined to attend the IME because the examination was scheduled at a location outside the city of her residence, Bloomington.
State Farm rescheduled the IME to take place in Bloomington on November 2, 1990, advising Neal by letter that "should you not cooperate in the scheduling and attendance of this examination, your No-Fault Benefits may be suspended." When Neal failed to attend or provide any reason for not attending, State Farm suspended payment of further no-fault benefits.
Upon suspension of benefits, Neal filed a petition for mandatory arbitration pursuant to Minn.Stat. § 65B.525 (1994). The arbitrator determined that because the insurer had failed to demonstrate that Neal's failure to attend the IME disqualified her from the receipt of benefits, she was entitled to an award of medical expense and wage loss benefits. The trial court vacated the arbitration award, concluding that the arbitrator exceeded his authority by determining a legal issue, and the decision was contrary to Minn.Stat. § 65B.56, subd. 1 (1994).
Neal appealed and the court of appeals remanded the matter to the arbitrator for a finding of whether Neal's failure to attend the IME was reasonable.[1] On remand, the arbitrator specifically found Neal's failure to attend the IME was unreasonable, but reaffirmed his view that Minn.Stat. § 65B.56, subd. 1 contained no provision for a cessation of benefits for an unreasonable failure to attend an IME. On motion, the district court again vacated the award on the basis that the arbitrator had exceeded his authority. The court construed section 65B.56, subd. 1 as allowing a forfeiture of benefits for an unreasonable refusal. The court of appeals reversed, construing the statute to allow only for the consideration of evidence of the unreasonable failure, not to provide for automatic termination of benefits. Neal v. State Farm Ins. Co., 509 N.W.2d 173 (Minn. App.1993).
In the area of automobile reparation, we have limited the arbitrator's role to one of deciding issues of fact, reserving to the courts the interpretation of the law. Johnson v. American Family Mut. Ins. Co., 426 N.W.2d 419, 421 (Minn.1988). The arbitrator found Neal's unexplained failure to attend the IME to be unreasonable, a finding which *332 is clearly within the scope of its factfinding authority. However, the consequences of that failure require interpretation and construction of either the statute or the insurance contract[2] or both. Sorenson v. St. Paul Ramsey Medical Ctr., 457 N.W.2d 188, 190 (Minn.1990).
The question presented here turns on an interpretation of Minn.Stat. § 65B.56, subd. 1, which provides:
Any person with respect to whose injury benefits are claimed under a plan of reparation security shall, upon request of the reparation obligor from whom recovery is sought, submit to a physical examination by a physician or physicians selected by the obligor as may reasonably be required.
The costs of any examinations requested by the obligor shall be borne entirely by the requesting obligor. Such examinations shall be conducted within the city, town, or statutory city of residence of the injured person. If there is no qualified physician to conduct the examination within the city, town, or statutory city of residence of the injured person, then such examination shall be conducted at another place of the closest proximity to the injured person's residence. Obligors are authorized to include reasonable provisions in policies for mental and physical examination of those injured persons.
If requested by the person examined, a party causing an examination to be made shall deliver to the examinee a copy of every written report concerning the examination rendered by an examining physician to that person, at least one of which reports must set out in detail the findings and conclusions of such examining physician.
An injured person shall also do all things reasonably necessary to enable the obligor to obtain medical reports and other needed information to assist in determining the nature and extent of the injured person's injuries and loss, and the medical treatment received. If the claimant refuses to cooperate in responding to requests for examination and information as authorized by this section, evidence of such noncooperation shall be admissible in any suit or arbitration filed for damages for such personal injuries or for the benefits provided by sections 65B.41 to 65B.71.
The provisions of this section apply before and after the commencement of suit.
Thus, the issue presented is whether, pursuant to Minn.Stat. § 65B.56, subd. 1, an insurer is authorized to suspend the payment of no-fault benefits in consequence of an insured's unreasonable failure to attend an independent medical examination.
While we have not addressed this issue, the court of appeals has on two separate occasions. In Ortega v. Farmers Ins. Group, the court affirmed an order of the district court denying the insured's motion to vacate an arbitration award. 474 N.W.2d 7 (Minn. App.1991). The court acknowledged that Minn.Stat. § 65B.56, subd. 1, authorized an arbitrator to consider the insured's failure to attend the scheduled IME, and concluded that the insured failed to demonstrate that the arbitrator exceeded his authority in approving the insurer's discontinuance of benefits for that failure. Id. at 10.
The issue later arose in a different context in Maryland Cas. Co. v. Harvey, 474 N.W.2d 189 (Minn.App.1991), pet. for rev. denied, (Minn. Oct. 11, 1991). There, when the insurer scheduled the IME, the insured responded that his attendance was dependent upon the insurer agreeing to a number of specific conditions. When the insurer refused to satisfy all conditions, the insured did not attend the IME and his benefits were *333 terminated. While arbitration was pending, the insurer commenced an action seeking a judicial declaration that the insured's failure to attend the IME precluded him from a continuing claim for benefits. The trial court denied relief, concluding the reasonableness of the refusal to attend was a question of fact for the arbitrator. The insurer appealed.
In a split decision, the court of appeals affirmed, concluding the reasonableness inquiry presents unique factual issues for the arbitrator's resolution. It then reasoned that because Minn.Stat. § 65B.56 does not specifically authorize the termination of benefits for nonattendance, no automatic termination would be implied.
We address this issue from a different perspective than did the court of appeals and are guided in our analysis not only by one of the purposes of the No-Fault Act, "to require medical examination and disclosure," Minn.Stat. § 65B.42, subd. 5 (1994) (emphasis added), but also by the reasoning offered by the Maryland Court of Special Appeals in Huntt v. State Farm Mut. Auto. Ins. Co., where it stated:
While § 539 was enacted in order to assure prompt payment of PIP benefits without regard to fault, this does not mean that PIP coverage was intended to provide a PIP claimant with a blank check. Maryland's no-fault statute, like those of other states, places a control on inflated or spurious claims by limiting the insurer's obligation to payment of "reasonable" expenses for "necessary" services arising from the accident in question. * * * In our view, it would be impossible in many cases for an insurer to determine whether a PIP claimant's expenses were "reasonable" and for "necessary" services if the insurer could not require that the claimant be examined by a physician of its choice.
527 A.2d 1333, 1335 (Md.Ct.Spec.App.1987), cert. denied, 311 Md. 286, 533 A.2d 1307 (1987).
The Minnesota No-Fault Act is comprehensive legislation designed to both simplify and ease the burden of litigation in efforts to compensate injured persons. Minn.Stat. § 65B.42, subd. 4 (1994). To achieve its designated goals, the legislature has imposed certain obligations on both the benefit claimant and the insurer. For example, the insurer is mandated to pay designated benefits to the insured promptly, Minn.Stat. § 65B.54. However, so that the insurer may be assisted in its gathering of information to determine the nature and extent of the injury and loss, the insured is required to cooperate in transmitting medical information and in submitting to an IME. Minn.Stat. § 65B.56, subd. 1. The quid pro quo implied in the Act is the protection of each of the parties  the insured by the prompt payment and in the reasonableness and location of any scheduled IME and the insurer by the cooperation of the claimant in its investigative efforts.
We, therefore, conclude the statute contemplates a balancing of the entitlements of each party in the sense that the continued receipt of benefits is conditioned on the reasonable submission to an independent medical examination. In reaching this conclusion, we are not unmindful of the provision in Minn.Stat. § 65B.56, subd. 1, which provides for the admissibility in evidence of a claimant's noncooperation in a proceeding seeking damages for personal injuries or benefits as provided in Minn.Stat. § 65B.51 (1994) and Minn.Stat. § 65B.71 (1994). Inasmuch as an insured is entitled to prompt payment of benefits, an insurer correspondingly is entitled to prompt access to independent medical information about a claimant. It is, therefore, our further conclusion that admissibility of a claimant's noncooperation is not the exclusive sanction. That the insurer suspends, rather than terminates, payment until the claimant has, upon request, submitted to a physical examination scheduled in accordance with the statutory guidelines seems eminently reasonable. Thereafter, during the arbitration process, the parties may produce evidence of either the reasonableness of the refusal to attend the IME so as to warrant the reinstatement of benefits, in the case of the claimant, or the appropriateness of the suspension of benefits for the claimant's lack of cooperation within the terms of the insurance contract or Minn.Stat. § 65B.56, subd. 1 and the prejudice suffered by the insurer in its efforts to gather information with regard to the claim, in the case *334 of the insurer. To the extent Maryland Cas. Co. v. Harvey, 474 N.W.2d 189 (Minn.App. 1991), pet. for rev. denied, (Minn. Oct. 11, 1991) is inconsistent with this decision, it is overruled.
Reversed.
COYNE, J., took no part in the consideration or decision of this matter.
NOTES
[1] Neal v. State Farm Ins. Co., No. C3-91-2515 (Minn.App. June 9, 1992).
[2] On the first submission to the arbitrator, he found that, because the insurance contract was not in evidence, there was no showing as to what reasonable provisions it contained to detail the consequences of the insured's failure to attend a scheduled IME. The policy became a part of the record before the district court on its first consideration of the arbitrator's award. After the court of appeals' proceedings and the remand, the arbitrator noted that the question of whether the unreasonable refusal would permit the insurer to deny payment under the terms of its policy was a separate question "on which the insurer failed to introduce any evidence." While the policy is of record and might provide an alternative basis for our consideration, we decline to address the question of the interpretation of this policy in conjunction with our de novo review. Castor v. City of Minneapolis, 429 N.W.2d 244, 245 (Minn. 1988).