Wesley **HOVLAND**, Appellant,

v.

**STATE FARM INSURANCE COMPANIES**, Respondent.

No. C3–98–2098.

Court of Appeals of Minnesota.

May 11, 1999.

Michael B. Sokol, Sokol Law Office, Bloomington, MN (for appellant)

William M. Hart, R. Gregory Stephens, Jenneane L. Jansen, Meagher & Geer P.L.L.P., Minneapolis, MN (for respondent)

Considered and decided by SHORT, Presiding Judge, PETERSON, Judge, and SHUMAKER, Judge.

## OPINION

SHUMAKER, Judge.

After the district court vacated a no-fault arbitrator's award of benefits on the ground that the arbitrator exceeded her authority, Wesley Hovland appealed. We affirm.

## FACTS

Hovland injured his neck at work in 1983. In December 1993, he suffered an aggravation of that injury in an automobile accident. He received medical treatment, and State Farm, his no-fault insurer, paid the bills without dispute. Two years and eight months after that treatment ended, Hovland again sought medical attention for the aggravation of his neck injury. He incurred medical expenses of $3,000 and submitted a claim for reimbursement. State Farm asked for medical verification. After reviewing records and interviewing Hovland, State Farm decided to suspend all payments until Hovland could be examined by a physician selected by State Farm.

Hovland refused to submit to an examination until State Farm paid his bills. Citing caselaw, Hovland's attorney wrote to State Farm to justify the refusal, contending that State Farm had breached the insurance contract by failing to pay Hovland's bills. Hovland then petitioned for arbitration.

State Farm questioned the jurisdiction of the arbitrator to decide the issue in dispute, but the arbitration proceeded. Without stating findings or otherwise explaining her decision, the arbitrator awarded Hovland a portion of his claim plus costs and interest.

State Farm moved the district court to vacate the award, and Hovland moved to confirm the award. Ruling that the arbitrator had decided a question of law by construing statutes and the insurance contract, the court vacated the award. This appeal followed.

## ISSUES

1. Did the arbitrator exceed her authority by ruling that an insured may refuse to submit to a section 65B.56 medical examination until the insurer first pays all outstanding claims?

2. May a no-fault insurer suspend the payment of benefits until the insured submits to a section 65B.56 medical examination that is reasonable as to time, location and circumstances?

## ANALYSIS

1. "[I]n the area of automobile reparation, arbitrators are limited to deciding issues of fact, leaving the interpretation of the law to the courts." *Johnson v. Ameri-*

*can Family Mut. Ins. Co.*, 426 N.W.2d 419, 421 (Minn.1988); *see* Minn.Stat. § 572.19, subd. 1(3) (1998) (stating, "upon application of a party, a trial court shall vacate an award when the arbitrators exceed their powers." We review de novo the issue of whether the arbitrator exceeded her authority. *Johnson,* 426 N.W.2d at 419.

■ There is no dispute that Minn.Stat. § 65B.54, subd. 1 (1998) provides that "[b]asic economic loss benefits are payable monthly as loss accrues" and that benefits are "overdue if not paid within 30 days after the reparation obligor receives reasonable proof of the fact and amount of loss realized." Minn.Stat. § 65B.54, subd. 1. Nor is there any dispute that a person claiming basic economic loss benefits

> shall, upon the request of the reparation obligor from whom recovery is sought, submit to a physical examination by a physician or physicians selected by the obligor as may reasonably be required.

Minn.Stat. § 65B.56, subd. 1 (1998). This case asks us to determine whether a no-fault insurer must first pay all outstanding economic loss claims before it is entitled to have the insured examined by a physician of its choice. The answer depends solely on an interpretation of law, which is beyond the scope of an arbitrator's authority. *Johnson,* 426 N.W.2d at 421. We find no assistance from the statutes.

■ 2. Caselaw interpreting section 65B.56 focuses on the factual determination of the "reasonableness" of the insured's refusal to attend a medical examination. *See, e.g., Neal v. State Farm Mut. Ins. Co.,* 529 N.W.2d 330, 333 (Minn.1995) (holding insured's unreasonable failure to attend independent medical examination warrants suspension of benefits); *Milwaukee Mut. Ins. Co. v. Murphy,* 474 N.W.2d 438, 440 (Minn. App.1991) (whether the insurer breached its contract by refusing to pay benefits to an insured who failed to attend a medical examination presents a fact issue that precludes summary judgment). But the factual inquiry into the "reasonableness" of an insured's refusal to attend an examination is secondary to the threshold issue of whether the insured

has a legal duty to attend even though the insurer has not paid all outstanding claims.

*Neal* is the leading Minnesota case on an insured's failure to attend a section 65B.56 examination. 529 N.W.2d at 330. The court in *Neal* was guided by an opinion construing a Maryland statute similar to section 65B.56:

> While Sec. 539 was enacted in order to assure prompt payment of PIP benefits without regard to fault, this does not mean that PIP coverage was intended to provide a PIP claimant with a blank check. Maryland's no-fault statute, like those of other states, places a control on inflated or spurious claims by limiting the insurer's obligation to payment of "reasonable" expenses for "necessary" services arising from the accident in question.

*Huntt v. State Farm Mut. Auto. Ins. Co.,* 72 Md.App. 189, 527 A.2d 1333, 1335 (1987) *cert. denied* 311 Md. 286, 533 A.2d 1307 (1987). That court held it is frequently impossible for an insurer to determine reasonableness and necessity without a medical examination by a physician of the insurer's choice. In *Neal,* the Minnesota Supreme Court recognizes that Minnesota's no-fault act imposes reciprocal obligations on insurer and insured:

> For example, the insurer is mandated to pay designated benefits to the insured promptly, Minn.Stat. Sec. 65B.54. However, so that the insurer may be assisted in its gathering of information to determine the nature and extent of the injury and loss, the insured is required to cooperate in transmitting medical information and in submitting to an IME. Minn.Stat. Sec. 65B.56, subd. 1.

529 N.W.2d at 333. The no-fault act also contemplates reciprocal sanctions for the insurer's failure to pay promptly and the insured's failure to cooperate with the insurer's medical inquiry. The insurer is required to pay a 15% interest penalty on overdue benefits. Minn.Stat. § 65B.54, subd. 2 (1998). The insured is subject to a suspension of benefits until he cooperates by submitting to a section 65B.56 medical examination. This is the sense of *Neal* when it states:

> We, therefore, conclude the statute contemplates a balancing of the entitlements of each party in the sense that the contin-

ued receipt of benefits is conditioned on the reasonable submission to an independent medical examination.

* * *

That the insurer suspends, rather than terminates, payment until the claimant has, upon request, submitted to a physical examination scheduled in accordance with the statutory guidelines seems eminently reasonable.

529 N.W.2d at 333.

■ If an insured may with impunity refuse to submit to a section 65B.56 examination on the allegation that the insurer has breached its contract, the quid pro quo nature of the no-fault system recognized by *Neal* is defeated. Thus, an insured must attend a section 65B.56 examination that is reasonable in time, location and circumstances, and the insurer may suspend payment of benefits until the insured complies.

## DECISION

The arbitrator exceeded her authority by deciding a purely legal issue. Under these circumstances, the district court did not err in granting State Farm's motion to vacate the arbitrator's award.

A no-fault insurer may suspend benefits until an insured has submitted to a reasonable section 65B.56 examination.

**Affirmed.**