Dana WEAVER, Wesley Hovland, Elizabeth Chorske, petitioners, Appellants,

v.

STATE FARM INSURANCE COMPANIES, petitioner, Respondent.

Nos. C9–98–1859, C3–98–2098, C1–98–2231.

Supreme Court of Minnesota.

April 27, 2000.

Rehearing Denied May 24, 2000.

Mark C. Vandelist, Vandelist & Vandelist, P.A., Burnsville, Sharon Vandyck, Schwebel Goetz & Sieben, Minneapolis, for Dana Weaver.

Michael B. Sokol, Sokol Law Office, Bloomington, for Wesley Hovland.

Charles A. Beckjord, Errol Kantor & Assoc., Minneapolis, for Elizabeth Chorske.

William M. Hart, Jenneane L. Jansen, Meagher & Greer, P.L.L.P., Minneapolis, for State Farm Ins. Companies.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, for amicus curiae MTLA.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for amicus curiae Insurance Federation of Minnesota.

## OPINION

RUSSELL A. ANDERSON, Justice.

In these three consolidated cases we examine the authority and jurisdiction of a no-fault arbitrator to award benefits when the insured has refused to attend an independent medical examination (IME) because of the insurer's nonpayment of a disputed claim. We hold that under the Minnesota No–Fault Act, Minn.Stat. § 65B.41–.71 (1998), the arbitrator has authority, on a case by case basis, to award, suspend or deny benefits based on the arbitrator's determination of. the reasonableness of the request for or the refusal to attend the IME.

In these three cases, the insured refused to attend an IME because claims for no-fault benefits had not been paid in full. In each case, the insurer, State Farm, suspended payment of benefits, relying on our decision in *Neal v. State Farm Mut. Ins. Co.*, 529 N.W.2d 330 (Minn.1995). In each case, the arbitrator awarded benefits, and State Farm moved the district court to vacate the arbitrator's award. In *Weaver v. State Farm Mut. Auto. Ins. Co.*, No. C9–98–1859, 1999 WL 293929 (Minn.App. May 11, 1999), the district court vacated the arbitrator's award and the court of appeals reinstated it. In *Hovland v. State*

*Farm Ins. Co's.*, 593 N.W.2d 271 (Minn. App.1999), the district court vacated the arbitrator's award and the court of appeals affirmed the district court's order. In *Chorske v. State Farm Ins. Co's.*, No. C1–98–2231, 1999 WL 366608 (Minn.App. June 8, 1999), the district court affirmed the arbitrator's award and the court of appeals reversed, remanding the case for additional findings.

We recite briefly the facts from each of the cases.

*Weaver*

Danna [1] Weaver sustained injuries in an automobile accident on May 9, 1997. State Farm did not challenge the fact that Weaver was injured and paid her claims for medical expenses and chiropractic care. Approximately two weeks after the accident Weaver received two chiropractic treatments in one day. On two later occasions, Weaver again received two treatments in one day. State Farm sent Weaver a letter informing her that an IME had been scheduled.

Weaver's attorney responded to State Farm's letter and indicated that Weaver would attend the IME only if State Farm paid her claims through the date of the IME. On July 31, 1997, State Farm informed Weaver that if she refused to submit to the IME her benefits would be suspended. State Farm paid all of Weaver's claims through August 12, 1997, the day before the scheduled IME, with the exception of the disputed double treatments, a prescription for an anti-depressant and a new mattress. State Farm suspended Weaver's benefits from that point on and on September 24, 1997, she filed a petition for no-fault arbitration.

The arbitration hearing was held on March 10, 1998, and Weaver still had not submitted to an IME. Weaver had in-

---

1. We note a discrepancy in the record regarding the spelling of Weaver's first name, and rely on her signature for the form adopted herein.

curred an additional $4,000 in medical expenses since the suspension, which were included in her demand in arbitration. The arbitrator awarded Weaver all of her requested medical benefits, expenses and interest and awarded partial costs but did not award wage loss benefits. The district court granted State Farm's motion to vacate the award, but the court of appeals reversed. The court of appeals·interpreted *Neal* to allow an insurer to suspend benefits but also to allow the arbitrator to make an award of benefits even if the insured had not submitted to an IME.

*Hovland*

Wesley Hovland was injured in an automobile accident on December 13, 1993. State Farm paid Hovland no-fault benefits through early 1994. In September 1996, Hovland began to experience flareups from the injury and he returned to his doctor for treatment. On December 9, 1996, Hovland began to submit claims to State Farm by mail. On February 20, 1997, the claims adjuster sent Hovland's physician a request for further information. The physician submitted a letter on March 24, 1997. On April 1, 1997, State Farm informed Hovland's attorney that the physician's response was insufficient. On May 5, 1997, Hovland's attorney informed State Farm that the physician had responded to the inquiry and that "[he didn't] know what further information [State Farm] want[s] or that would be relevant to this claim." The attorney requested payment by May 13 and informed State Farm that if payment was not made Hovland would file for arbitration. After receiving no response, Hovland filed a petition for no-fault arbitration on May 14, 1997.

On August 27, 1997, State Farm sent Hovland a letter informing him that an IME had been scheduled for September 27. Hovland refused to attend. The arbitration hearing was held on November 3, 1997. The arbitrator awarded Hovland a portion of his claimed benefits. The district court granted State Farm's motion to vacate the arbitrator's award. The court of appeals affirmed the district court.

*Chorske*

Elizabeth Chorske was injured in an automobile accident on July 27, 1995. State Farm paid Chorske's medical expenses for approximately 11 months. On July 26, 1996, shortly after completing a second course of physical therapy, Chorske began chiropractic treatment. State Farm received Chorske's first claim for chiropractic treatment on August 3, 1996,[2] and on August 13, 1996, State Farm sent Chorske a letter informing her that an IME had been scheduled for September 13, 1996. Chorske informed State Farm that she had a work conflict and could not attend the IME. State Farm scheduled three subsequent IMEs. Chorske claimed that she had work conflicts for the next two IMEs and that her attorney told her not to attend the last IME because State Farm had not paid her chiropractic bills. State Farm then scheduled another IME which Chorske refused to attend. State Farm then suspended further payment of no-fault benefits. On January 29, 1997, Chorske filed for arbitration.

The arbitrator awarded Chorske benefits through November 11, 1996, which ap-

**2.** State Farm and amicus Minnesota Insurance Federation raise the specter of the practice of "front loading," where insureds receive treatment for many months but do not submit claims until they have amassed large bills. Chorske's claims were received within eight days of her first treatment. Indeed, it does not appear that any of the appellants in this case engaged in this practice. Related to this issue, appellants filed a motion to strike the appendix to the amicus brief of the Insurance Federation as outside the record. The appendix consists of what appears to be two form letters written seven years ago by an attorney to unidentified chiropractors purporting to describe how to "front load" a claim. The motion to strike the appendix is granted.

pears to be the date her benefits were suspended for refusing to attend the last IME, and denied benefits thereafter. The district court affirmed the arbitrator's award, finding that the arbitrator could have found that Chorske's work conflicts were legitimate and that she had reasonably missed the initial IMEs, but that her subsequent refusal to cooperate was unreasonable which justified the suspension of her benefits under *Neal*. The court of appeals reversed and remanded the case to district court.

We granted the petitions for review of State Farm, Hovland and Chorske, along with Chorske's motion to consolidate these three cases.

## I.

We turn now to the question in these cases: whether the no-fault arbitrator has jurisdiction to award, suspend or deny benefits when the insured has refused to attend an IME because of nonpayment of a disputed claim.

The claimants argue that the no-fault statute and rules give authority to arbitrators to determine whether a refusal to attend an IME is reasonable, and on the basis of that determination to thereafter determine whether benefits are to be paid or denied. Respondent State Farm argues that an arbitrator does not have jurisdiction or authority to award disputed benefits when the insured has refused to attend an IME because of the insurer's refusal to pay a disputed claim. State Farm contends that the issue is one of law, not of fact, and that the arbitrator has no authority to decide a legal issue. Further, State Farm contends, citing our decision in *Neal*, that as a matter of law an insurer can suspend the payment of disputed benefits until the insured attends a reasonable IME.

■ We begin by acknowledging that no-fault arbitrators are limited to deciding questions of fact, leaving the interpretation of law to the courts. *See Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419, 421 (Minn.1988). Arbitration regarding automobile reparations therefore departs from the generally accepted principle that "arbitrators are the final judges of both law and fact." *Id.* (citing *State, by Sundquist v. Minnesota Teamsters Pub. and Law Enforcement Employees Union Local No. 320*, 316 N.W.2d 542, 544 (Minn.1982)). The limitation on the final authority of arbitrators is based on the perceived need for consistency in interpretation of the No–Fault Act. *See id.* at 421.

■ Nonetheless, we have adopted rules authorizing arbitrators in no-fault cases where the claim is for less than $10,000 to "grant any remedy or relief deemed just and equitable." Rule 32, Rules of Procedure for No–Fault Arbitration; *see also* Minn.Stat. § 65B.525 (1998) (mandating binding arbitration for claims under $10,000). To grant relief, arbitrators must apply the law to the facts they have found. *See, e.g., Great West Cas. Co. v. State Farm Mut. Auto. Ins. Co.*, 590 N.W.2d 675, 677 n. 1 (Minn.App.1999). That is, as a general proposition, the arbitrator has jurisdiction to award, suspend or deny benefits. To achieve the consistency desired in interpreting the no-fault act, this court and the district court review de novo the arbitrator's legal determinations necessary to granting relief. *See, e.g., Neal*, 529 N.W.2d at 331.

## II.

■ We turn next to the more specific question whether the refusal to submit to an IME based on the insurer's nonpayment presents an issue of fact or law for the arbitrator. We conclude that under the no-fault statute refusal presents an issue of reasonableness, which is a fact issue to be determined by the arbitrator.

The no-fault statute specifically provides for an IME: "Any person with respect to whose injury benefits are claimed under a plan of reparation security shall, upon request of the reparation obligor from whom recovery is sought, submit to a physical examination by a physician or physicians selected by the obligor as may reasonably be required." Minn.Stat. § 65B.56, subd. 1 (1998). The statute explicitly requires that the IME request be reasonable. *See id.*

The statute also specifically requires cooperation by the claimant:

An injured person shall also do all things reasonably necessary to enable the obligor to obtain medical reports and other needed information to assist in determining the nature and extent of the injured person's injuries and loss, and the medical treatment received. If the claimant refuses to cooperate in responding to requests for examination and information as authorized by this section, evidence of such noncooperation shall be admissible in any suit or arbitration filed for damages for such personal injuries or for the benefits provided by sections 65B.41 to 65B.71.

Minn.Stat. § 65B.56, subd. 1. Thus, in addition to requiring that an IME request be reasonable, the statute requires the insured to "do all things reasonably necessary" to assist in determining the nature of the extent of injuries and need for medical treatment. *See id.* The mutual obligations reflect the balancing of the entitlements of each party, which we recognized in *Neal. See* 529 N.W.2d at 333.

Reasonableness has traditionally been considered an issue of fact. *See, e.g., Nicollet Restoration, Inc. v. City of St. Paul,* 533 N.W.2d 845, 848 (Minn.1995). Therefore, it is entirely appropriate for an arbitrator to determine the reasonableness of both the insurer's request for an IME and, as we recognized in *Neal,* the reasonableness of the insured's refusal to attend. *See* 529 N.W.2d at 331–32. Based on that determination, the arbitrator may proceed to "grant any remedy or relief that the arbitrator deems just and equitable." Rule 32, Rules of Procedure for No–Fault Arbitration.

State Farm argues that *Neal* established that, as a matter of law, an insurer may suspend payment of no-fault benefits until the claimant has submitted to a reasonably requested IME, and that the arbitrator therefore lacks jurisdiction to award benefits when presented with this legal issue.

In *Neal,* the insured refused to attend an IME, and the unreasonableness of that decision was properly determined by the arbitrator. *See* 529 N.W.2d at 331. The issue in *Neal* was the remedy: whether the insurer is authorized to suspend the payment of no-fault benefits in consequence of an insured's unreasonable failure to attend the IME. We held that the no-fault statute contemplates that the continued receipt of benefits is conditioned on the reasonable submission to an IME, and that the suspension of benefits pending an IME unreasonably refused is "eminently reasonable." 529 N.W.2d at 333. In *Neal* we rejected the argument that the arbitrator was limited to considering the prejudice to the insurer resulting from the IME refusal in the granting of benefits. *See id.*

State Farm's argument that the suspension of benefits on the refusal of an IME has been determined as a matter of law in *Neal* overlooks the central theme of that decision: that arbitrators are to make the determination of reasonableness and the consequences thereof within the arbitration itself:

Thereafter, during the arbitration process, the parties may produce evidence of either the reasonableness of the refusal to attend the IME so as to warrant the reinstatement of benefits, in the case

of the claimant, or the appropriateness of the suspension of benefits for the claimant's lack of cooperation within the terms of the insurance contract or Minn. Stat. § 65B.56, subd. 1 and the prejudice suffered by the insurer in its efforts to gather information with regard to the claim, in the case of the insurer.

529 N.W.2d at 333–34. Clearly the right to suspend benefits upon the refusal of an IME is not absolute.[3] It is for the arbitrator to determine the reasonableness of the request for the IME and the refusal, and to also order an appropriate remedy, which may include suspension of payment for disputed benefits until the claimant submits to an IME. The insurer bears the risk that the arbitrator will find suspension on the basis of an IME refusal to be inappropriate, and award payment and a 15 percent penalty. *See* Minn.Stat. § 65B.54, subd. 2 (1998).

■ Arbitration is particularly appropriate where a speedy, informal and relatively inexpensive procedure for resolving controversies is needed. *See Layne–Minnesota Co. v. Regents of Univ. of Minn.*, 266 Minn. 284, 287, 123 N.W.2d 371, 374 (1963). Reliance on an arbitrator for resolving disputes about an IME is therefore consistent with the goals of the No–Fault Act, which include speeding the administration of justice, requiring medical examination and disclosure, and ensuring prompt payment. *See* Minn.Stat. § 65B.42 (1998). The arbitrator's determination of reasonableness of the request for and refusal of the IME and the attendant consequences also fits within the other duties of the no-fault arbitrator this court has promulgated, such as the authority to permit any discovery allowable under the Rules of Civil Procedure, and to extend time limits for the comple-

tion of physical examinations. *See* Rule 12, Rules of Procedure for No–Fault Arbitration.

In contrast, State Farm's urged severance of legal and factual issues between court and arbitrator would interfere with the goal of speeding the administration of justice. As litigants dispute the obligations under the act, it makes little sense to require them to shuttle back and forth between the arbitrator making factual determinations and the court deciding legal questions. Rather, the arbitrator can determine the facts and apply the law to those facts subject to de novo review by the district court.

The court' of appeals in *Hovland* determined that the no-fault arbitrator lacked jurisdiction to decide whether the insurer was entitled to withhold benefits pending an IME. The *Hovland* panel stated, "[T]he factual inquiry into the 'reasonableness' of an insured's refusal to attend an examination is secondary to the threshold issue of whether the insured has a legal duty to attend even though the insurer has not paid all outstanding claims." 593 N.W.2d at 273.

■ However, the legislature established that the legal duty in the No–Fault Act is one of reasonableness. *See* Minn. Stat. § 65B.56, subd. 1. Therefore, the reasonableness determination must be made first, and by the arbitrator. We reject the holding in *Hovland* that reasonableness is a secondary issue to the legal duty to attend an IME. On a disputed request for an IME, the arbitrator must first determine whether the request and refusal are reasonable before determining the consequences of the refusal. Whereas the reasonableness determination is a factual find-

---

**3.** Part of the reasonableness determination involves evaluating the procedural history of the dispute. For example, in *Hovland*, State Farm did not request that Hovland submit to an IME until several months after Hovland's demand for arbitration. Therefore, State Farm cannot claim it was justified in suspending payments based on the IME refusal when it had not even made the request for an IME when payments were suspended.

ing for which the arbitrator is the final judge (*See Sundquist*, 316 N.W.2d at 544), the legal consequence of the refusal is subject to de novo review by the district court.[4] In performing de novo review, the district court must consider whether the relief ordered by the arbitrator is consistent with the purposes of the No–Fault Act. *See* Minn.Stat. § 65B.42.

State Farm argues that to allow arbitration to go forward when an insured refuses an IME gives arbitrators the authority to require insurers to either pay a claim before obtaining any independent medical information, or defend in adversarial proceedings without that information, which leaves them in a dilemma.[5] The no-fault statute certainly requires prompt payment, indeed penalizes the failure to pay promptly. *See* Minn.Stat. § 65B.54, subds., 1, 2 (1998). However, the statutory scheme also recognizes that insurers will at times need more than 30 days to investigate a claim (including arranging for an IME), and may ultimately deny some claims. *See* Minn.Stat. §§ 65B.54, subd. 5 (1998); 72A.201, subd. 4(3) (1998).[6]

■ It appears the legislature intended to allow the insurer to withhold payment during a reasonable investigation period or pending arbitration over the disputed claim, subject to a 15 percent interest penalty after 30 days if the insured prevails. *See* Minn.Stat. § 65B.54, subd. 2. The penalty gives the insurer an incentive to resolve claims quickly and not to deny payment frivolously. However, because nonpayment of some claims was contemplated by the legislature, it would appear the insured has no right based on the insurer's nonpayment to refuse a reasonably requested IME.

■ Accordingly, the dilemma State Farm posits is inconsistent with the role of the arbitrator under the No–Fault Act and rules. An arbitrator is not authorized to award payment for medical treatment after finding the IME request with respect to that treatment was reasonable and necessary to the determination of benefits and its refusal unreasonable. As such, insurers should not be required to defend in adversarial proceedings without necessary medical information.

---

4. Arbitrators are not required to give reasons for their decisions, which may impair judicial review. *See Hilltop Constr. Inc. v. Lou Park Apartments*, 324 N.W.2d 236, 239–40 (Minn. 1982). However, the district court has the authority to compel arbitrators to clarify their awards. *See id.* at 240; Minn.Stat. § 572.16 (1998); Rule 38 Rules of Procedure for No–Fault Arbitration. To achieve the purpose of the No–Fault Act in expediting resolution of claims, we urge arbitrators to indicate whether the award rests on a finding concerning reasonableness or on a legal determination.

5. State Farm argues in particular that the facts of *Chorske* demonstrate the unfairness of allowing an arbitrator to decide reasonableness long after the demand for an IME was made and additional medical bills incurred. Chorske refused to attend three IMEs because of claimed work conflicts. At State Farm's fourth request for an IME, she refused on the advice of her attorney, based on State Farm's refusal to pay the outstanding medical bills. The arbitrator awarded benefits incurred through the last refusal. The ultimate issue again goes to reasonableness: did Chorske

truly have a work conflict, and did the parties try to accommodate schedules to give effect to the statutory mandate to "do all things reasonably necessary" to enable the insurer to obtain medical information? *See* Minn.Stat. § 65B.56, subd. 1. The arbitrator is in the best position to assess the credibility of the witnesses and make this determination.

6. In *Milwaukee Mut. Ins. Co. v. Murphy*, the court of appeals held that the insurer's nonpayment within 30 days after an IME was refused raised a material issue of fact whether the insurer breached the insurance contract. *See* 474 N.W.2d 438, 440 (Minn.App.1991). Because each no-fault auto insurance policy in Minnesota is subject to the statutory requirements of the no-fault act, and the act contemplates an insurer may withhold payment for certain reasons, a breach of contract analysis under these facts is improper. *See Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). *Murphy* is overruled to the extent inconsistent with our holding today.

■ Once the arbitrator makes the determination of the reasonableness of the IME request and refusal, there is a range of options for the remedy or relief available to the arbitrator. If the IME request was reasonable and its refusal unreasonable, the arbitrator may award or ratify the insurer's suspension of disputed payments until an IME is completed. If the arbitrator finds that the insurer is so prejudiced by the unreasonable failure to attend an IME that the insurer cannot defend against the claim, the arbitrator may proceed to deny benefits for which the IME is necessary.

■ Where the arbitrator has determined that a request for an IME was unreasonable and the refusal reasonable, the arbitrator may or may not proceed to award benefits. For example, where the arbitrator finds that an IME is unnecessary, the arbitrator may proceed to award or deny benefits based on the record presented.

■ In sum, the refusal to attend an IME on the basis that the insurer has not paid outstanding claims may or may not prevent the arbitrator from ordering that benefits be paid. It is for the arbitrator to decide the reasonableness of the IME request and the reasonableness of the claimant's response to the request. The arbitrator has authority on a case by case basis to award, suspend or deny benefits when the insured has refused to attend an independent medical examination because of nonpayment of a disputed claim. The relief awarded is subject to de novo review by the district court, however.

Having decided the legal issues presented, we must determine whether remand of these cases to the district court for further proceedings consistent with this decision is necessary.

In *Weaver*, the arbitrator awarded all medical costs, the district court vacated the award and on appeal the court of appeals reversed the district court, remanding for review of the award and the inclusion of accrued interest. *Weaver* is in this respect affirmed, with direction to the district court to consider our holding in reviewing the award.

In *Hovland*, the court of appeals affirmed the district court's vacation of the arbitrator's award of a portion of Hovland's claim. We reverse and remand to the district court for review of the arbitration award in light of our holding today.

In *Chorske*, the district court concluded the arbitrator must have determined that Chorske's initial refusals of the IME were reasonable, and affirmed the arbitrator's partial award of benefits. The court of appeals reversed on the basis of *Hovland*. We reverse the court of appeals and reinstate the district court's confirmation of the arbitrator's decision.

Affirmed in part, reversed in part, and *Weaver* and *Hovland* are remanded.