**FRERICHS CONSTRUCTION COMPANY, INC.,**
Respondent,

v.

**MINNESOTA COUNTIES INSURANCE TRUST,**
Appellant,

v.

**Julian M. Johnson Construction Corporation, et. al., Third–Party Defendants,**

v.

**Buetow & Associates, Inc., Third–Party Defendant and Third–Party Plaintiff,**

v.

**Fischer Engineering, Inc., et al., Additional Third–Party Defendants,**

v.

**Twin City Glass Contractors, Inc., Intervenor.**

No. C9–03–307.

Court of Appeals of Minnesota.

July 29, 2003.

Jay T. Squires, Joseph J. Langel, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for appellant Minnesota Counties Insurance Trust.

Jocelyn Knoll, Scott Johnson, Fabyanske, Westra & Hart, P.A., Minneapolis, MN, for respondent Frerichs Construction Company, Inc.

Considered and decided by RANDALL, Presiding Judge, SCHUMACHER, Judge, and WILLIS, Judge.

## OPINION

RANDALL, Judge.

Respondent construction company, which had contracted with appellant to construct a building, sued appellant for damages resulting from a breach of contract. Appellant counterclaimed, alleging that respondent had breached the contract by failing: (1) to report the presence of asbestos and (2) to promptly cease operations upon discovery of the asbestos, contending that it incurred expenses in abating the asbestos from the site and from a pit where respondent had placed it. The district court granted summary judgment to respondent on the counterclaim. Appellant argues that there was a jury question as to whether respondent "reasonably believed" that asbestos was present, which would have required it to stop excavation. We affirm.

## FACTS

The facts of this case concern a site known as the Empire Builder Industrial Park. This site has had various uses over the years, including uses as an asphalt plant, a foundry, and an auto-salvage yard. In 1985, the St. Paul Port Authority (SPPA) purchased the site along with adjoining land to re-develop it into the Empire Builder Industrial Park. Over the course of the project, various buildings

were demolished. Part of this process involved the removal of asbestos insulation.

In 1993, the SPPA hired American Engineering and Testing (AET) to conduct environmental assessments of the site, including soil borings and soil testing. Upon performing a Phase I evaluation, AET did not find any contamination of the soil. Although subsequent tests revealed that the site's soil was contaminated with diesel-range organics and volatile organic compounds, no asbestos was detected. On April 14, 1999, based on AET's numerous environmental assessments, the Minnesota Pollution Control Agency (MPCA) issued a "No Further Action" letter to the SPPA, stating SPPA need not take any further action to remediate groundwater and soil contamination for the site. This letter cleared the way for construction to begin on the site. Appellant Minnesota Counties Insurance Trust (MCIT) purchased the site shortly thereafter.

In November 1999, AET completed an excavation contingency plan that was part of a conditional purchase agreement between appellants and the SPPA to offset the cost of geotechnical soil-correction work in the area where the building was to be constructed. The contingency plan identified steps the general contractor should take to detect contamination during the course of excavation. But, the contingency plan only addressed detecting oily or stained soil, and not asbestos.

On May 12, 2000, appellant entered into a contract with respondent, Frerichs Construction Company, Inc., to be the general contractor for a project to construct a new office building. The pertinent part of the contract states in Article 10.1.2 that:

> In the event the Contractor encounters on the site material reasonably believed to be asbestos or polychlorinated biphenyl (PCB) which has not been rendered harmless, the Contractor shall immedi-

ately stop Work in the area affected and report the condition to the Owner and Architect in writing.

The contract further provides in Article 10.1.4 that:

> To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Work in the affected area if in fact the *material is asbestos* or polychlorinated biphenyl (PCB) and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Owner, anyone directly or indirectly employed by the Owner or anyone for whose acts the Owner may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Subparagraph 10.1.4.

Despite the existence of the contingency plan, respondent was not made aware of the plan until July 24, 2000.

Respondent began construction of the building on June 12, 2000, and on June 19, 2000, respondent's excavation subcontractor, third-party defendant Julian M. Johnson Construction Corporation (Johnson), began the project's excavation work. While excavating the site, Johnson encoun-

tered buried concrete and other construction debris, but nothing it recognized to be asbestos. Johnson transported some of the excavated materials to the Hammes Sand and Gravel Company in Lake Elmo, Minnesota, while the rest of the material was stockpiled on the site.

During the excavation process, a representative of Stork Twin City Testing (TCT) was retained by appellant to perform independent testing. The representative examined the excavation and construction debris and did not detect the presence of asbestos. Further, project architect Randy Engel visited the site on July 7, 2000, to observe and report on the progress of the construction. Engel did not detect the presence of asbestos. A few days later, the MPCA visited the site and inspected the stockpiled soil. The MPCA, once again, did not detect the presence of asbestos.

On July 18, 2000, MPCA returned to the site to re-inspect the soil. While inspecting the site, a MPCA worker discovered what appeared to be asbestos. MPCA immediately notified appellant, who in turn, notified respondent. Respondent correctly stopped work on the excavation and piling as soon at it learned of the possible presence of asbestos. Subsequent tests were conducted to determine whether the soil contained asbestos.

During the course of the testing, a meeting was held on July 19, 2000, where it was determined that respondent would suspend all excavation until the parties were notified of the test results. Braun Intertec collected various soil samples that confirmed MPCA's suspicion of the presence of asbestos. Shortly thereafter, Braun completed a contingency plan addendum that described the procedures that should be used to investigate, manage, and dispose of contaminated soil and construction debris encountered during the project construction. Even with the existence of the addendum, all grading and site work remained on hold until additional testing was completed. Over the next several months, additional evidence of the presence of asbestos was discovered, furthering delay of the project. This delay caused the completion date of the project to be postponed.

On December 5, 2001, respondent filed a complaint alleging breach of contract and breach of warranty by appellant. Appellant counterclaimed against respondent and Johnson. Count I of the counterclaim alleged breach of contractual obligation to notify the owner of alleged differing site conditions and the presence of asbestos. Count II alleged breach of contractual obligation to seasonally complete the project. Respondent and Johnson moved for summary judgment, seeking a dismissal of Count I of the counterclaim. On October 9, 2002, the court granted summary judgment on Count I, finding that "[t]he pertinent facts necessary to determine the issues raised herein are uncontroverted as is the clear and undisputed language of the contract between the parties." This appeal followed.

**ISSUE**

Is the question of whether respondent reasonably believed that asbestos was present an issue of fact for the jury, thereby rendering it an error for the district court to grant summary judgment in favor of respondent, dismissing appellant's counterclaim?

**ANALYSIS**

On an appeal from summary judgment, this court asks two questions: (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its interpretation of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). This court views the evi-

dence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

In applying rule 56, the district court must determine whether the nonmoving party has presented, based on affidavits, depositions, pleadings, and other submissions, a genuine issue of material fact for trial. Minn. R. Civ. P. 56.03. Summary judgment should not be granted if reasonable minds could draw different conclusions from the evidence. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn.1997). The burden falls on the nonmoving party to present evidence sufficiently probative to an essential element of the claim to allow reasonable minds to reach different conclusions. *Id.* at 71.

Appellant argues that the question of whether respondent "reasonably believed" that asbestos was present in the material it was excavating is a question of fact for the jury to decide. The Restatement of Torts states that "reasonably believes" is used to:

> [d]enote the fact that the actor believes that a given fact or combination of facts exists, and that the circumstances which he knows, or should know, are such as to cause a reasonable man so to believe.

Restatement (Second) of Torts § 11 (1965). Reasonableness is generally considered a question of fact for the jury. *Weaver v. Sate Farm Ins. Cos.,* 609 N.W.2d 878, 883 (Minn.2000). Reasonableness becomes an issue of law when the record is devoid of any facts that would support a conclusion that an action or belief is reasonable. *See Nicollet Restoration, Inc. v. City of St. Paul,* 533 N.W.2d 845, 848 (Minn.1995).

Appellant's counterclaim alleges in Count I that respondent breached a contractual obligation to report the presence of asbestos. The record supports the district court's decision to grant summary judgment in favor of respondent with regard to Count I of the counterclaim. Part of the contract between respondent and appellant requires respondent to stop excavating if it "encounters on the site material reasonably believed to be asbestos." The record contains no evidence that respondent ever reasonably believed asbestos was present at the site, and then did not report it.

Appellant contends that when the MPCA inspected the site on July 18, 2000, it took only moments for MPCA personnel to notice the presence of asbestos. Rather, the evidence indicates that when the MPCA inspected the site on July 18, the MPCA representative discovered material that only *appeared* to be asbestos. As stated above, multiple times prior to July 18, 2000, people and entities in the business of looking for asbestos had not noticed any at the construction site. The presence of asbestos, after the July 18 sighting, was confirmed only after extensive testing was completed on the soil. In the meantime, respondent had correctly ceased all work at the site pursuant to the contract when it learned of the July 18 sighting.

Respondent argues convincingly that its failure to detect the possibility of asbestos before July 18 was not unreasonable because multiple parties, including the MPCA, a representative of TCT, and project architect Randy Engel had all previously failed to detect the presence of asbestos before July 18, despite their contacts with the site.

Appellant argues that William Naatz, respondent's project superintendent, testified that he had been involved in four or five projects where asbestos, or material believed to be asbestos, was found, and, thus, Naatz "could have" or "should have" noticed the possible presence of asbestos

before July 18, 2000. A review of Naatz's testimony reveals that before July 18, 2000, his only encounters with asbestos consisted of observing asbestos materials wrapped around old, deteriorated, but intact, pipes located in existing and intact buildings. Old pipes were not involved in the MPCA July 18 sighting. Naatz testified that he was only able to recognize asbestos material after October 12, 2000. Naatz testified that on or about October 12, 2000, an agent from Mavo Systems "educated" him on how to identify asbestos under the present circumstances. It was only after this "instruction" that Naatz was able to recognize the possible presence of asbestos at the site. Naatz stated that if he had seen the same material before July 18, 2000, he would not have suspected the material to be asbestos.

Appellant asserts that respondent excavated hundreds of cubic yards of materials, and, based on its expert testimony, a reasonable and prudent contractor would have known that asbestos was being unearthed at the site because there was simply too much to miss. We disagree. One of the "experts," Kruse, was assigned to test the Hammes pit. Kruse had no first-hand knowledge of the site's condition. He gathered the basis for his "expert report" solely from second-hand information about the site from a colleague. Appellant's other expert, Connell, was the representative from the MPCA who discovered what appeared to be asbestos at the site. Notably, the MPCA was at the site approximately a week earlier and had failed to detect the presence of asbestos.

We conclude, as the district court did, that appellant's two expert opinions regarding the presence of asbestos at the site did not establish a fact question as to whether respondent had a basis to reasonably believe that there was asbestos at the site prior to July 18, 2000. What the record does show is that the site, from which respondent removed hundreds of cubic yards of materials, had been inspected, tested, and approved by environmental engineers and the MPCA. Appellant's predecessor's, SPPA, also extensively tested the site and failed to detect the presence of asbestos.

Importantly, respondent is not licensed to handle or identify hazardous materials. Respondent did not advertise itself as such to appellant, and appellant, with full control over whom it would hire to excavate and who might be allowed to subcontract, did not specify that the bidder have expertise in asbestos or other hazardous material identification. The contract did not require respondent to test for or actively seek asbestos or to furnish trained personnel capable of identifying hazardous materials. The contract merely stated that respondent was to suspend work if it encountered materials reasonably believed to be asbestos and report this to appellant.

The contract provided that respondent did not assume responsibility for all liability related to the construction site. It provided that appellant was not responsible if hazardous material was found on the site.

There is insufficient evidence in the record to create a fact issue as to whether respondent reasonably believed, prior to July 18, 2000, that asbestos was present at the site. Accordingly, summary judgment was appropriate.

## DECISION

We conclude there are no genuine issues of material fact concerning whether respondent reasonably believed that asbestos was present at the site. It was not error for the district court to grant summary

judgment in favor of respondents, dismissing appellant's counterclaim.

**Affirmed.**