**FARMERS INSURANCE EXCHANGE,**
**Plaintiff–Appellee,**

v.

**Eric SITTNER, Defendant–Appellant.**

**No. 94CA0247.**

Colorado Court of Appeals,
Div. V.

June 15, 1995.

Rehearing Denied July 20, 1995.

Anderson, Campbell and Laugesen, P.C., Robert L. McGahey, Jr., Yvonne M. Kreye, Denver, for plaintiff-appellee.

Bryans & Bryans, Richard W. Bryans, Richard W. Bryans, Jr., Denver, Colorado; White & Steele, P.C., Kevin W. Hecht, Denver, for defendant-appellant.

Opinion by Judge ROTHENBERG.

Defendant, Eric Sittner, appeals from the declaratory judgment entered in favor of plaintiff, Farmers Insurance Exchange (Farmers). We affirm.

In 1990, Sittner was seriously injured when he was hit by an Arapahoe County dump truck while riding his bicycle.

At the time of the accident, Sittner was insured by Farmers under two policies. Upon Sittner's request, Farmers paid him Personal Injury Protection (PIP) benefits of $41,618.66 for medical bills and lost wages. Asserting that the county was the primary carrier, *see* § 10–4–707(3), C.R.S. (1994 Repl. Vol. 4A), Farmers made a demand upon the county for reimbursement of the PIP benefits that Farmers had paid Sittner. The county reimbursed Farmers for those benefits and also paid Sittner's remaining PIP expenses incurred as a result of the accident.

Sittner also filed a tort claim against the county seeking damages for the negligence of its employee.

In June 1992, the county and Sittner entered into a settlement agreement resolving Sittner's tort claims. The parties stipulated that the reasonable value of Sittner's injuries exceeded $150,000. The county represented that it was self-insured for the first $150,000 of PIP coverage and/or liability damages per person. The county's position was that its maximum liability for PIP benefits and/or tort damages under the Governmental Immunity Act, § 24–10–114, C.R.S. (1994 Cum. Supp.), was $150,000.

Contrary to the advice of his insurer, Farmers, Sittner settled his claim with the county in accordance with the county's position. Consistent with that position, the county paid Sittner $83,697.74 under the settlement agreement. This amount was calculated by taking $150,000 (the maximum benefit conceded by the county) and subtracting PIP benefits it had paid to Sittner as well as the other $41,618.66 in PIP benefits the county had reimbursed to Farmers. In the settlement agreement, Sittner also reserved the right to pursue a claim against Farmers for reimbursement of the amounts the county had paid to Farmers.

Thereafter, Sittner demanded that Farmers reimburse him for the $41,618.66 it had received from the county. According to Sittner, the county's payment to Farmers reduced the amount of insurance available to compensate him in violation of § 10–4–717(4), C.R.S. (1994 Cum.Supp.).

Farmers filed this declaratory judgment action against Sittner, seeking a determination as to whether Sittner was entitled to reimbursement. The trial court ruled that Sittner was not entitled to such reimbursement and entered a declaratory judgment in favor of Farmers.

The court found that: (1) the limits set by the Governmental Immunity Act pertain to tort liability and are not subject to reduction by PIP benefits paid pursuant to the No-Fault Act; (2) Sittner had the full $150,000 tort liability available to him regardless of the fact that the county had reimbursed Farmers; and (3) since the county's reimbursement to Farmers did not reduce the amount of liability insurance available to compensate Sittner, Farmers was not required to reimburse Sittner.

Sittner contends that the trial court erred in entering a declaratory judgment in favor of Farmers. More specifically, he contends that Farmers was not entitled to be reimbursed for PIP benefits it had paid Sittner and that such reimbursement by the county reduced the amount of insurance available to compensate him in violation of § 10–4–717(4).

Because we hold that PIP payments are not included within the maximum liability limit of $150,000 established under the Governmental Immunity Act, we reject Sittner's contention.

Section 10–4–717(4) states:

Nothing in this section shall be construed to allow an insurer to claim and receive reimbursement, whether by arbitration, subrogation, litigation, intracompany set-off, or any other means, from the liability insurance of the tort-feasor in such a manner as to reduce the amount of liability insurance available to reasonably compensate an injured victim having a claim or cause of action under 10–4–714.

■ The Colorado Auto Accident Reparations Act, § 10–4–701, et seq., C.R.S. (1994 Repl.Vol. 4A) (No–Fault Act) governs the rights and liabilities for personal injuries resulting from automobile accidents. The basic purpose of the No–Fault Act is "to avoid inadequate compensation to victims of automobile accidents" by requiring registrants of motor vehicles to procure insurance which provides "benefits to persons ... injured in accidents involving such vehicles." Section 10–4–702, C.R.S. (1994 Repl.Vol. 4A). *See Cingoranelli v. St. Paul Fire & Marine Insurance Co.,* 658 P.2d 863 (Colo.1983).

■ To accomplish this objective the No–Fault Act requires self insureds to provide minimum PIP coverage in prescribed amounts payable regardless of fault. Section 10–4–706(1), C.R.S. (1994 Repl.Vol. 4A). *See* § 10–4–705(1), C.R.S. (1994 Repl.Vol. 4A).

A PIP claim when a self insured entity is involved is a direct statutory action against the self insurer. PIP claims are distinct from tort claims in both purpose and effect. *See Cingoranelli v. St. Paul Fire & Marine Insurance Co., supra; Marquez v. Prudential Property & Casualty Insurance Co.,* 620 P.2d 29 (Colo.1980) (intent of the No–Fault Act is to allow an injured party full PIP as well as full tort recovery absent double compensation). *Cf. Newton v. Nationwide Mutual Fire Insurance Co.,* 197 Colo. 462, 594 P.2d 1042 (1979) (insurance policy allowing insurer to offset PIP benefits against uninsured motorist coverage void as against public policy; such a provision allows an insur-

ance carrier to provide less than the statutorily mandated minimum coverage).

In analyzing Sittner's argument, we also must consider the fact that he is bringing this action against Arapahoe County, a public entity.

■ With limited exceptions, the Governmental Immunity Act bars any claim against a public entity for injuries that lie in tort or could lie in tort. Section 24–10–108, C.R.S. (1994 Cum.Supp.). One limited situation in which the General Assembly has deemed it appropriate to waive the defense of sovereign immunity is in an action involving the operation of a motor vehicle owned or leased by a public entity and operated by its employee while in the course of employment. Section 24–10–106(1)(a), C.R.S. (1988 Repl.Vol. 10A). *See Bertrand v. Board of County Commissioners*, 872 P.2d 223 (Colo.1994); *Bain v. Town of Avon*, 820 P.2d 1133 (Colo.App. 1991).

Section 24–10–114(1), C.R.S. (1988 Repl. Vol. 10A) sets forth the maximum amounts that may be recovered under the Governmental Immunity Act. As relevant here, the maximum amount that may be recovered from a public entity for an injury to one person in any single occurrence is $150,000.

■ When a tort claim is filed against a governmental entity, PIP payments made by a governmental entity are separate and distinct from its tort liability because, as previously noted, two separate obligations are involved. The PIP payments are a statutory obligation imposed without regard to fault, whereas any tort liability arises from fault. *See* §§ 10–4–705(1), and 10–4–706, C.R.S. (1994 Repl.Vol. 4A). *Cf. Cingoranelli v. St. Paul Fire & Marine Insurance Co., supra.*

If a governmental entity were entitled to deduct PIP payments from its maximum liability under the Governmental Immunity Act, such a setoff conceivably could allow the governmental entity to pay only PIP benefits, and injured parties would receive nothing for their tort claims. Further, if PIP benefits exceeded the liability limits, the governmental entity's liability under the Governmental Immunity Act effectively would be reduced or eliminated. Such a result would lead to inadequate compensation to victims of automobile accidents.

■ Applying those principles, here, we hold that Sittner's claims for PIP benefits from Farmers and/or the county were separate and distinct from his tort claim against the county. Thus, since Sittner was eligible to receive $150,000 in settlement of his tort claim, even though he actually did not receive the full amount, the county's reimbursement to Farmers of PIP benefits paid did not reduce the amount of insurance available to compensate him. *See Marquez v. Prudential Property & Casualty Insurance Co., supra.*

Accordingly, the trial court did not err in entering a declaratory judgment in favor of Farmers.

In view of our conclusion that the county's payment to Farmers did not diminish Sittner's entitlement to full compensation, and inasmuch as the county is not a party to this proceeding, we do not determine whether such payment may have violated § 10–4–713, C.R.S. (1994 Repl.Vol. 4A).

The judgment is affirmed.

RULAND and ROY, JJ., concur.