Kari LOVEN, et al., Appellants,

v.

CITY OF MINNEAPOLIS,
et al., Respondents,

Federal Signal Corporation,
et al., Defendants,

and

Kelsey Loven, a minor, by her father
and natural guardian, Kyle A. Loven,
and Kyle A. Loven, individually, Ap-
pellants,

v.

City of Minneapolis, et
al., Respondents, .

and

Jean M. Lanz, Appellant,

v.

State Farm Mutual Automobile
Insurance Company,
Defendant,

City of Minneapolis, et
al., Respondents.

No. C5–00–1925.

Court of Appeals of Minnesota.

May 15, 2001.

James S. Ballentine, James R. Schwebel,
Schwebel, Goetz Sieben, Minneapolis, MN,
for appellants.

Jay M. Heffern, Minneapolis City Attorney, James A. Moore, Assistant City Attorney, Minneapolis, MN, for respondents.

Considered and decided by TOUSSAINT, Chief Judge, G. BARRY ANDERSON and PORITSKY, Judges.

## OPINION

BERTRAND PORITSKY, Judge *

Appellants brought an action in district court seeking basic economic loss benefits from the respondent city of Minneapolis pursuant to the no-fault insurance act. Minn.Stat. § 65B.44 (1998). The district court ruled that the limits in the municipal tort liability law, Minn.Stat. § 466.04 (1998), applied to recovery of no-fault benefits from the city. Because we conclude as a matter of law that these limits do not apply, we reverse.

## FACTS

At the Holidazzle parade in downtown Minneapolis on December 4, 1998, a city-owned police van driven by a police officer went out of control. It crashed into a crowd of parade goers, killing two people and seriously injuring several others, including appellants.

Appellants brought actions for no-fault benefits against the city, and the district court determined that the city was their primary no-fault insurer. Both sides moved for summary judgment on the issue of whether basic economic loss benefits payable under the no-fault act were subject to the municipal tort liability cap. It is undisputed that the cap of $750,000 is inadequate to cover all of the damages from the deaths and injuries that resulted from the accident. The district court, ruling in favor of respondent city, held that

the cap applies to no-fault benefits, and this appeal followed.

## ISSUE

Are the city's obligations for basic economic loss benefits under the no-fault insurance act, Minn.Stat. § 65B.44 (1998), limited by the municipal tort liability cap set forth in Minn.Stat. § 466.04 (1998)?

## ANALYSIS

■ Interpretations of statutes raise questions of law that are reviewed de novo. *McClain v. Begley,* 465 N.W.2d 680, 682 (Minn.1991). The Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (1998), has many purposes, including "[t]o relieve the severe economic distress of uncompensated victims of automobile accidents," to prevent overcompensation, to encourage medical treatment, to ease the burden of litigation, and to provide offsets to avoid duplicate recovery. Minn.Stat. § 65B.42 (1998). Under this act, every owner of a motor vehicle in Minnesota, including a political subdivision, must maintain a "plan of reparation security" to provide basic economic loss benefits and residual liability coverage. Minn.Stat. § 65B.48, subds. 1, 4 (1998).

■ The respondent city of Minneapolis chose to self-insure. *See* Minn.Stat. § 65B.48, subd. 4 (1998) (providing that political subdivision may provide a plan of reparation security through self-insurance or through purchase of insurance). "Self-insurance is the functional equivalent of a commercial insurance policy." *McClain,* 465 N.W.2d at 682. A decision to self-insure does not exempt a municipality from the requirements of the no-fault act. *Rasmussen v. Sauer,* 597 N.W.2d 328, 330

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

(Minn.App.1999), *review denied* (Minn. Sept. 14, 1999).

The city does not dispute that it is appellants' primary no-fault insurer. However, citing the municipal tort liability act, Minn.Stat. ch. 466 (1998), it contends that both the tort and no-fault claims arising out of the accident are subject to the limits contained in that law.

Municipalities are liable for their own torts, subject to certain limitations and exceptions. Minn.Stat. § 466.02 (1998). The monetary limitation applicable to tort claims arising out of this accident is $750,000. Minn.Stat. § 466.04, subds. 1(a)(2), 1b (1998).

The city contends that the basic economic loss benefits—which include medical expenses, disability and income loss payments, funeral and burial expenses, and replacement service payments—are part of any potential tort recovery by appellants. *See* Minn.Stat. § 65B.44 (1998) (providing for basic economic loss benefits). Further, the law provides that such benefits are "subject to any applicable deductibles, exclusions, disqualifications, and other conditions." *Id.*, subd. 1 (1998). The city argues that neither the no-fault act nor the municipal tort liability act specifically exempts basic economic loss benefits from the municipal liability cap. Reading the statutes together, the city asserts that the limit must apply.

There are major differences between tort law and no-fault law. Tort law has its origins in the common law. *Anker v. Little,* 541 N.W.2d 333, 337 (Minn.App.1995), *review denied* (Minn. Feb. 9, 1996). It is based on the concept of fault. *See Tester v. American Standard, Inc.,* 590 N.W.2d 679, 680–81 (Minn.App.1999) (discussing effect of allocation of fault between parties), *review denied* (Minn. June 16, 1999). In contrast, the no-fault act is solely a creature of statute. Minn.Stat.

§§ 65B.41–.71 (1998). It is based on the concept of compensation, regardless of fault. *See* Minn.Stat. §§ 65B.42 (1998). Given these differences, it would be expected that if the legislature had intended the municipal tort liability cap to apply to basic economic loss benefits, it would have done so expressly.

There are areas in which the legislature has expressly addressed the effect tort law and no-fault have on each other. Thus, basic economic loss benefits recovered under no-fault are to be deducted from any tort recovery. Minn.Stat. § 65B.51, subd. 1 (1998). In addition, tort recovery is not available unless certain thresholds provided for in the no-fault act are met. Minn. Stat. § 65B.51, subd. 3 (1998).

We have said that when a statute speaks with clarity in limiting its application to specifically enumerated subjects, its application shall not be extended to other subjects by process of construction.

*Martinco v. Hastings,* 265 Minn. 490, 495, 122 N.W.2d 631, 637 (1963) (citations omitted). The fact the legislature has expressly provided that in certain instances tort law and no-fault law are each to be modified by the other, yet did not apply the municipal liability cap to no-fault, supports the conclusion that the legislature did not intend the cap to apply to no-fault law.

 Moreover, in a suit against a city, the supreme court has stated statutes concerning sovereign immunity "should be read restrictively," because "one should be liable for the harm one causes." *Wilson v. City of Eagan,* 297 N.W.2d 146, 149–50 (Minn.1980). By the same reasoning, the municipal liability cap should also be treated restrictively, so that municipalities are liable for the harm they cause. *See Ronning v. Citizens Sec. Mut. Ins. Co.,* 557 N.W.2d 363, 366 (Minn.App.1996) (stating that no-fault act does not indicate that

legislature intended that the municipal liability cap apply to an insurer's underinsured motorist coverage). A restrictive reading of the municipal liability cap would yield the conclusion that it should not apply to no-fault without an express legislative command to do so.

Finally, the city points to the legislative purpose behind the municipal tort liability cap—to protect taxpayers from a catastrophic liability arising out of a single incident—and argues that this can only be achieved by applying the tort limit to no-fault basic economic loss benefits claims. We disagree. Under no-fault, when an insured obtains a policy, the no-fault coverage is limited by the terms of the policy, which must comply with the requirements of the no-fault act. *See* Minn.Stat. § 65B.44, subd. 1 (1998) (mandating maximum coverage of $40,000 for loss arising out of injury to any one person). We recognize that the city in this case is self-insured, but the city's obligations under no-fault are identical whether it is self-insured or whether it purchases a policy from a third-party insurer. Minn.Stat. § 65B.48, subd. 4 (1998) (providing that "any political subdivision of the state * * * shall provide security by lawfully obligating itself to pay benefits in accordance with [the no-fault act], either as a self-insurer * * * or through purchase of a plan of reparation security"). There is nothing in the record of this case to suggest that the city has taken any affirmative act to increase its no-fault obligation above the statutory maximum. We conclude that on the record presented, the city's no-fault exposure is not unlimited, but is determined by section 65B.44, subdivision 1 (1998).

### DECISION

We conclude that the municipal tort liability cap does not apply to basic economic loss benefits. Any duplicate recovery may be offset as provided in Minn.Stat. § 65B.51 (1998).

**Reversed.**