Kari LOVEN, et al., Respondents,

v.

CITY OF MINNEAPOLIS, et al.,
Petitioners, Appellants,

Federal Signal Corporation,
et al., Defendants,

and

Kelsey Loven, a minor by her father and natural guardian, Kyle A. Loven, and Kyle A. Loven, individually, Respondents,

v.

City of Minneapolis, et al., petitioners, Appellants,

and

Jean M. Lanz, Respondent,

v.

State Farm Mutual Automobile Insurance Company, Defendant,

City of Minneapolis, et al., petitioners, Appellants.

No. C5–00–1925.

Supreme Court of Minnesota.

March 7, 2002.

James A. Moore, Minneapolis City Attorney's Office, Minneapolis, MN, Appellant's Attorney(s).

James S. Ballentine, James R. Schwebel, Schwebel, Goetz & Sieben, Minneapolis, MN, Respondent's Attorney(s).

Clayton M. Robinson, Jr., St. Paul City Attorney, Peter G. Mikhail, Assistant City Attorney, St. Paul, MN, for Amicus Curiae City of St. Paul.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, MN, for Amicus Curiae MN Trial Lawyers Assoc.

## OPINION

ANDERSON, RUSSELL A., Justice.

Respondents brought actions against the City of Minneapolis seeking tort damages and basic economic loss benefits under the Minnesota No–Fault Automobile Insurance Act ("No–Fault Act") for injuries resulting from the crash of a police van into a crowd of people. The city moved for partial summary judgment declaring that the municipal tort liability cap of $750,000 includes any payments the city is required to make to respondents under the No–Fault Act. After finding that the no-fault benefits sought were in the nature of tort damages and were to be included in the tort liability cap, the district court granted the city partial summary judgment. The court of appeals reversed, concluding that the city's obligation to pay basic economic loss benefits under the No–Fault Act is not limited by the municipal tort liability cap. *Loven v. City of Minneapolis*, 626 N.W.2d 198, 201 (Minn.App.2001). We affirm.

On the evening of December 4, 1998, during the seasonal "Holidazzle Parade" along Nicollet Mall in downtown Minneapolis, a city-owned police van crashed into a crowd of spectators, killing two people and seriously injuring several others, including respondents. The city admitted that respondents had reasonably incurred medical expenses as a result of the accident. In addition, all parties agree that damages for the Holidazzle accident will exceed the municipal tort liability cap of $750,000 for claims arising out of a single occurrence. *See* Minn.Stat. § 466.04, subd. 1(a)(2) (2000). The city, which self-insures under the No–Fault Act,[1] deposited with the district court $750,000, and respondents seek additional payment from the city of basic economic loss benefits under the No–Fault Act. The issue this case presents is whether the tort liability cap includes basic economic loss benefit payments under the No–Fault Act, or whether respondents are able to collect under the No–Fault Act in addition to any damages they might receive within the tort liability cap.

To resolve the issue of whether the municipal tort liability cap includes payments of basic economic loss benefits required by the No–Fault Act, we must interpret and give effect to the two applicable statutes. Our construction of statutes is de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

We begin with an overview of each statute. The No–Fault Act requires all automobile owners in Minnesota to carry no-fault automobile insurance and provides for the prompt payment by the reparation obligor of basic economic loss benefits without regard to fault. Minn.Stat. §§ 65B.42, 65B.48, subd. 1 (2000). Basic economic loss benefits include medical expense benefits, disability and income loss benefits, funeral and burial benefits, re-

---

1. The No–Fault Act provides for self-insurance upon approval from the Commissioner of Commerce. Minn.Stat. § 65B.48, subd. 3 (1998).

placement service loss benefits, survivor's economic loss benefits, and survivor's replacement services loss benefits. Minn. Stat. § 65B.44 (1998). The No–Fault Act includes an offset provision requiring that courts deduct any payment of no-fault economic loss benefits paid from the same kind of damages received as part of a negligence lawsuit. *See* Minn.Stat. § 65B.51, subd. 1 (2000); *Tuenge v. Konetski*, 320 N.W.2d 420, 421–23 (Minn.1982). This provision is consistent with the goal of the No–Fault Act to avoid duplicate recovery. Minn.Stat. § 65B.42(5). At the time of the accident, the statute provided for a maximum coverage for basic economic loss benefits of $40,000 per automobile accident victim, including $20,000 for medical expense loss and $20,000 for income and the other losses described above. Minn.Stat. § 65B.44, subd. 1 (1998).[2]

As a limited waiver of sovereign immunity, the Tort Claims Act allows a city to be held liable for its torts subject to certain exceptions and limitations. *Watson v. Metro. Transit Comm'n*, 553 N.W.2d 406, 412 (Minn.1996). The statute limited a city's tort liability for certain claims arising on or after January 1, 1998, and before January 1, 2000, to $750,000 for any number of claims arising out of a single occurrence. Minn.Stat. § 466.04, subd. 1(a)(2). We recognized the legitimacy of government liability caps in *Lienhard v. State*, 431 N.W.2d 861, 867 (Minn.1988), where we acknowledged that based on the myriad functions of government, "public entities are exposed to far greater risks and liability than a private individual." Not all tort claims are covered under the cap; for example, a city remains immune from liability for claims in connection with the assessment and collection of taxes, or certain claims based on snow or ice conditions on

any highway. *See* Minn.Stat. § 466.03, subds. 3, 4 (1998).

The city argues that payment of basic economic loss benefits should be included within the municipal tort liability cap, since the No–Fault Act is simply a part of automobile accident tort liability law that requires, without regard to fault, prompt payment of benefits for the same type of loss that a plaintiff seeks recovery for in a tort action. That is, the medical expenses, disability and income loss, and burial expenses included in the definition of basic economic loss benefits are the same types of damages a plaintiff would receive in a tort action, and therefore basic economic loss benefits should be included in the tort liability cap. According to the city, the offset provision of the No–Fault Act, Minn. Stat. § 65B.51, subd. 1, confirms that no-fault benefits are the same as tort damages.

According to respondents, basic economic loss benefits are required by contract, and thus are not tort damages. Respondents argue that the city entered into a contractual agreement to meet its obligations as the reparation obligor under the No–Fault Act when it promised, upon authorization from the Commissioner of Commerce, to self-insure under Minn.Stat. § 65B.48, subd. 3 to pay basic economic loss benefits as required by the No–Fault Act. Respondents argue that tort damages and claims for basic economic loss benefits under the No–Fault Act are fundamentally different in nature, as basic economic loss benefits are payable regardless of fault, and tort damages are payable only when fault is established. Moreover, the city may be required to pay basic economic loss benefits even when a claimant has not met the threshold requirements of Minn.Stat.

---

**2.** This subdivision was amended in 1999 to replace "maximum of $40,000" with "minimum of $40,000." Act of May 18, 1999, ch. 177, § 67, 1999 Minn. Laws 956, 998.

§ 65B.51, subd. 3 (2000) to permit a tort claim.[3]

However, "[t]he object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2000). Therefore, whether basic economic loss benefits derive from a contract obligation or tort damages does not answer the question. Rather, we must determine whether the legislature intended the municipal tort liability cap to include payments of basic economic loss benefits under the No–Fault Act.

While the legislature has not expressly addressed the issue before us,[4] it has included provisions in the municipal tort liability statute and the No–Fault Act that are instructive. The No–Fault Act provides for a minimum amount of coverage for any one person injured, whereas the tort liability statute operates on a per occurrence limit. Thus, in accidents involving a large number of victims, the tort liability cap conflicts with the first purpose of the No–Fault Act to provide a basic level of recovery for all uncompensated victims of automobile accidents. *See* Minn. Stat. § 65B.42. For example, if an accident involved more than 19 people, each entitled to $40,000 in no-fault benefits, the tort liability cap would be reached before full recovery under the No–Fault Act by the victims. In that scenario, the legislative policy of compensation up to the no-fault limits is frustrated, although the liability cap is effective. *See also Farmers Ins.*

*Exchange v. Sittner,* 902 P.2d 938, 941 (Colo.Ct.App.1995) (holding county could not deduct personal injury protection payments from tort liability cap because to do so would result in inadequate compensation for tort claim).

We recognize that the legislature had a legitimate purpose in limiting the liability of municipalities. *Snyder v. City of Minneapolis,* 441 N.W.2d 781, 789 (Minn.1989) (holding liability cap on municipal tort liability to be " 'rationally related to the legitimate government objective of insuring fiscal stability to meet and carry out the manifold responsibilities of government,' " quoting *Lienhard,* 431 N.W.2d at 868). However, in order to facilitate the underlying purposes and philosophy of our tort law, we read the tort liability cap restrictively. *See Wilson v. City of Eagan,* 297 N.W.2d 146, 149–50 (Minn.1980) (holding sovereign immunity should be treated restrictively). In *Wilson,* this principle led us to conclude that punitive damages against municipal officers were allowable in tort actions against municipalities and their officers despite the liability cap for compensatory damages and the ban on punitive damages against the city. *Id.* We noted that the legislature did not amend the statute to preclude such an award based on our decision in *Douglas v. City of Minneapolis,* 304 Minn. 259, 230 N.W.2d 577 (1975). *Wilson,* 297 N.W.2d at 149. Similarly, in this case the legislature did not include no-fault payments

3. Minnesota Statutes § 65B.51, subdivision 3 provides that there may only be recovery of damages for noneconomic detriment in a negligence action when certain conditions are met. Of course, a person may also bring a negligence action for economic loss not paid or payable under Minn.Stat. § 65B.44. Minn. Stat. § 65B.51, subd. 2 (2000).

4. The city's argument that the tort liability cap is an "other condition" in Minn.Stat.

§ 65B.44 disregards the context of that phrase. The statute reads, "Basic economic loss benefits shall provide reimbursement * * * subject to *any applicable deductibles, exclusions, disqualifications, and other conditions,* * * *." Minn.Stat. § 65B.44, subd. 1. The context suggests that the conditions referred to are conditions of coverage under the insurance policy, and not statutory conditions.

within the types of liability under the tort liability cap in Chapter 466, nor did it limit the applicability of the No–Fault Act to actions against municipalities falling within the cap.

Contrasted with our restrictive reading of the tort liability cap is the "over-arching policy of full compensation" reflected in the No–Fault Act. *Scheibel v. Illinois Farmers Ins. Co.*, 615 N.W.2d 34, 38 (Minn.2000). We believe that we can best give effect to both statutes consistent with these principles by holding that the liability cap applies to tort damages separate from the basic economic loss benefits to which all persons injured as a result of the maintenance or use of a motor vehicle are entitled. Under this reading, the municipality will not be exposed to unlimited liability. First, respondents may receive only limited basic economic loss benefits, specifically, $40,000 per individual in a single occurrence. Minn.Stat. § 65B.44, subd. 1. Moreover, tort damages not included in basic economic loss benefits but included within the scope of Minn.Stat. § 466.01–.15 are limited by the municipal tort liability cap. Finally, respondents are denied duplicate recovery, as provided in Minn.Stat. § 65B.51, subd. 1. *See also Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 379 (Minn.1990) (rejecting double recovery for the same harm as a general matter).

We hold that the municipal tort liability cap, Minn.Stat. § 466.04, does not limit a self-insured municipality's obligation to pay basic economic loss benefits as a reparation obligor under the Minnesota No–Fault Automobile Insurance Act.

Affirmed.