WESTERN NATIONAL INSURANCE
COMPANY, Appellant,

v.

Bruce THOMPSON, et
al., Respondents.

No. A09–1506.

Court of Appeals of Minnesota.

May 4, 2010.

Richard S. Stempel, Christopher M. Drake, Stempel & Doty, PLC., Hopkins, MN, for appellant.

Mark A. Karney, Karney & Associates, Minneapolis, MN, for respondents.

Considered and decided by ROSS, Presiding Judge; SHUMAKER, Judge; and RANDALL, Judge.*

## OPINION

SHUMAKER, Judge.

Two insureds made claims under their no-fault automobile insurance policy and cooperated with the insurer in investigating the claims. However, the insureds refused to submit to examinations under oath, claiming that, because they had already fully cooperated, it was unreasonable for the insurer to require the examinations.

The insureds, over the insurer's objection, submitted the issue of the reasonableness of the examinations to arbitration, which resulted in awards to the insureds. The insurer contended that the sole issue was a legal one, namely, whether the insureds had breached their contract, and it brought a declaratory-judgment action and moved for summary judgment.

The district court agreed with the insureds and the arbitrators that the case presented an issue of reasonableness that was an arbitrable fact issue. The court denied the insurer's summary-judgment motion and confirmed the arbitration awards.

Because the case does not present an arbitrable fact issue, the district court erred in confirming the arbitration awards and denying the motion for summary judgment. We reverse.

## FACTS

Respondent Bruce Thompson and his wife, Respondent Cindy Thompson, are insured under a no-fault "Personal Auto Policy" written by appellant Western National Insurance Company. Among other things, the policy provides first-party insurance coverage of "reasonable expenses incurred for necessary medical ... services because of 'bodily injury'" to an insured as a result of a motor vehicle accident. The policy also covers resulting wage losses.

The Thompsons were injured in a car accident on September 27, 2007, and they incurred expenses for chiropractic treatments. Cindy Thompson also lost wages because of the accident. They filed claims with Western National for benefits under their no-fault policy. In connection with their claims, they cooperated with the insurer in providing medical authorizations and other information the insurer requested.

Western National paid insurance benefits of $7,111.40 to Bruce Thompson and $7,196.50 to Cindy Thompson. Sometime after doing so, Western National learned that Cindy Thompson was employed by the chiropractic office from which she and her husband received treatments because of the car accident, that both parties had received chiropractic care prior to the accident, and that possibly some or all of the treatments were given free or at a reduced charge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

Western National then notified the Thompsons that it intended to "conduct examinations under oath" of each of them as provided in the insurance policy, and it proposed a schedule for the examinations.

Through their attorney, the Thompsons objected to the "reasonableness of [Western National's] request," contending that examinations under oath were not warranted, and noting that they had "cooperated completely with [Western National's] investigation into their claims." They further stated that they believed that "they have provided [Western National] with all the information it needs to continue to pay their claims." Thus, the Thompsons declined to submit to examinations under oath.

Treating the Thompsons' refusal as a failure to cooperate with the insurer, and, therefore, a breach of the insurance contract, Western National denied all further insurance benefits.

The Thompsons filed for no-fault arbitration. Western National moved to stay the arbitration and started a declaratory-judgment action in the district court. The basis for the motion to stay the arbitration was Western National's contention that the case involved a breach of contract, which raised only questions of law beyond the jurisdiction of arbitration. Two separate arbitrators were appointed for the respective claims. One of the arbitrators addressed the motion to stay, saying that the no-fault act requires claimants to "do all things reasonably necessary" to enable insurers to investigate claims, that "[t]he issue of reasonableness presents a fact issue rather than a legal issue," and that "it is entirely appropriate for an arbitrator to determine the reasonableness" of an insurer's request and an insured's refusal to comply with that request. The arbitrators denied the stay. The arbitrations went forward and resulted in awards of $9,430.11 to Bruce Thompson and $9,824 to Cindy Thompson.

In the declaratory-judgment action, Western National moved for summary judgment on its breach-of-contract claim, and the Thompsons moved to confirm their arbitration awards.

The district court denied Western National's motion and confirmed the awards, ruling that "[r]easonableness is traditionally a question of fact, and under the no-fault statute, refusal represents an issue of reasonableness, which is a fact issue to be determined by the arbitrator." This appeal followed.

## ISSUES

A no-fault automobile insurance contract requires the insured to submit to an examination under oath conducted by the insurer respecting the insured's claim for benefits. Without contending that this contract requirement is unconscionable and without offering a legal excuse for noncompliance, the insured refused to comply, contending that the insured had already fully cooperated with the insurer and therefore the request for the examination was unreasonable.

1. Does the insureds' contention raise a legitimate arbitrable fact issue?

2. Under the circumstances of the case, is the insureds' refusal to perform this contractual duty a breach of contract as a matter of law?

## ANALYSIS

The arbitrators determined, and the district court agreed, that the Thompsons' refusal to submit to examinations under oath created a factual issue of reasonableness within the arbitrators' jurisdiction. "[N]o-fault arbitrators are limited to deciding questions of fact, leaving the interpretation of law to the courts."

*Weaver v. State Farm Ins. Cos.,* 609 N.W.2d 878, 882 (Minn.2000). "An arbitrator's findings of fact are final." *State Farm v. Liberty Mut. Ins. Co.,* 678 N.W.2d 719, 721 (Minn.App.2004), *review denied* (Minn. June 29, 2004). We review questions of law de novo. *Id.*

The relevant part of the Thompsons' insurance policy provides that:

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

. . . .

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

. . . .

3. Submit, as often as we reasonably require:

. . . .

b. To examinations under oath and subscribe the same.

Citing a provision of the no-fault act, the Thompsons argue that the insurer may compel only reasonable cooperation from them in the investigation of claims: "Any person receiving benefits under sections 65B.41 to 65B.71 shall participate and cooperate, as reasonably required under the coverage...." Minn.Stat. § 65B.56, subd. 2 (2008). We have held that "[u]nder no-fault, when an insured obtains a policy, the no-fault coverage is limited by the terms of the policy, which must comply with the requirements of the no-fault act." *Loven v. City of Minneapolis,* 626 N.W.2d 198, 201 (Minn.App.2001), *aff'd,* 639 N.W.2d 869 (Minn.2002). Albeit a bit tautological in that pronouncement, *Loven* does recognize the significance of the insurance contract in setting out the rights and duties of the contracting parties.

Additionally, the examination-under-oath requirement in insurance contracts has had long-standing judicial approval in Minnesota. *See Hamberg v. St. Paul Fire & Marine Ins. Co.,* 68 Minn. 335, 337, 71 N.W. 388, 388 (1897) (noting requirement of insurance policy that insured submit to examination in presence of notary). Even the United States Supreme Court has recognized the right of insurers to require insureds to submit to examinations under oath so as to permit insurers to obtain knowledge relevant to claims, "to enable them to decide upon their obligations, and to protect them against false claims." *Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81, 94–95, 3 S.Ct. 507, 515, 28 L.Ed. 76 (1884).

■ The Thompsons have created an apparent dispute about the reasonableness of the enforcement of the provision of their insurance policy that clearly and indisputably permits Western National to examine them under oath respecting their claims for insurance benefits. In essence, they contend that they have cooperated enough with Western National and that it is unreasonable for the insurer to require any further compliance with the duties outlined in the policy. They further argue that "reasonableness" raises a fact issue; that fact issues are arbitrable; that the arbitrators decided that it was not reasonable for Western National to require examinations under oath; and that factual determinations by no-fault arbitrators are final.

Although the question of reasonableness in the enforcement of an insurance policy can require factual determinations, that is not the issue here. There are no disputes of fact. The policy requires the Thompsons to submit to examinations under oath. They have refused to do that. The Thompsons do not contend that the policy provision at issue is unconscionable or ambiguous; or that the time and place set for

the examinations are unreasonable; or that the frequency of examinations under oath was unreasonable. In fact, Western National has not previously asked the Thompsons to submit to examinations under oath. And Western National does not dispute that the Thompsons have cooperated with all of the insurer's other requests respecting the investigation of these claims.

By positing as a fact issue their refusal to comply with a clear contractual duty, the Thompsons invited the arbitrators to engage in a de facto revision of the insurance contract. As rewritten, the contract would provide that an insured is excused from the duty to submit to an examination under oath if the insured unilaterally decides that he or she has already cooperated sufficiently and that the insurer needs no further information respecting a claim.

In the context of the undisputed facts of this case, only a legal question emerges: Did the Thompsons breach their insurance contract by refusing to comply with the requirement that they submit to at least one examination under oath? This is a question of insurance coverage that is not dependent on the resolution of a fact dispute. As such, the question is purely one of law and is not within the authority of no-fault arbitrators to decide. *See John-son v. Am. Family Mut. Ins. Co.*, 426 N.W.2d 419, 421 (Minn.1988) (holding that "in the area of automobile reparation, arbitrators are limited to deciding issues of fact, leaving the interpretation of the law to the courts").

■ Not only does this case raise a purely legal issue, it also requires no contract "interpretation." The plain language of the contract states that Western National has "no duty to provide coverage" unless the insured "[s]ubmit[s], as often as [the insurer] reasonably require[s] ... [t]o examination under oath." The Thompsons have offered no legal excuse for their refusal to comply with this provision of the insurance contract to which they agreed. Absent a defense recognized in law, the failure or refusal of a party to a contract to perform a duty imposed is a breach of that contract. *Associated Cinemas of Am., Inc. v. World Amusement Co.*, 201 Minn. 94, 99, 276 N.W. 7, 10 (1937). The consequence of the Thompsons' breach is the negation of insurance coverage for their claims, although presumably Western National will reinstate coverage after it has conducted the requisite examinations. We offer no comment on any further coverage issues that might arise from the information obtained in the examinations under oath.

Thus, we hold that the legal issues of breach of contract and insurance coverage in this case were not arbitrable issues; that the Thompsons breached their contract as a matter of law; and that the district court erred in confirming the arbitration awards and in denying Western National's motion for summary judgment. To hold otherwise would allow a party to an insurance contract to rewrite its obligations under the guise of challenging the reasonableness of those obligations in arbitration.

We note two additional matters raised in the appeal. The first is the district court's determination that the instant case is analogous to *Weaver v. State Farm Ins. Co.*, 609 N.W.2d 878 (Minn.2000). But the issue in *Weaver* was the insured's refusal to submit to an independent medical examination (IME). That issue is controlled, not by an insurance policy, but by statute: Any person claiming benefits under a no-fault insurance policy must submit to a physical examination requested by the insurer "as may reasonably be required." Minn.Stat. § 65B.56, subd. 1 (2008). As the supreme court in *Weaver* pointed out,

"[t]he statute explicitly requires that the IME request be reasonable." *Weaver*, 609 N.W.2d at 883. Thus, by statute, it would be possible that an insurer's request for even one IME could be unreasonable. At least it could legitimately raise the issue of reasonableness. *Weaver* is not analogous here because the requirement as to examination under oath is found in the insurance contract rather than in a statute; there is no precondition of reasonableness that the insurer must satisfy before it may require an examination under oath; and an examination under oath is very different from the necessarily invasive and privacy-compromising physical medical examination.

The second matter of note is the Thompsons' argument that the discovery sought through an examination under oath is the "type of formal discovery [that] is discouraged by the arbitration rules." *See* Minn. R. No-Fault Arb. 12 (stating that "[f]ormal discovery is discouraged"). The requirement of examination under oath arises from the contract and not from rules of arbitration. Furthermore, the rules of arbitration apply when arbitration has been properly commenced. That is not the case here.

Finally, Minnesota law requires that insurers "institute, implement, and maintain" anti-fraud procedures designed to help diminish "claims fraud." Minn.Stat. § 60A.954, subd. 1(1) (2008). As noted by the Supreme Court in *Claflin*, one object of the examination-under-oath requirement is to protect insurers against false claims. *Claflin*, 110 U.S. at 94–95, 3 S.Ct. at 514–515.

## DECISION

Because respondents presented no arbitrable fact issue but rather breached their insurance contract as a matter of law, the district court erred in confirming the arbitration awards and in denying the appellant's motion for summary judgment.

**Reversed.**