**WESTERN NATIONAL INSURANCE COMPANY, Respondent,**

v.

**Bruce THOMPSON, et al., Appellants.**

No. A09–1506.

Supreme Court of Minnesota.

May 18, 2011.

Richard S. Stempel, Stempel & Doty, PLC, Hopkins, Minnesota; and Diane B. Bratvold, Briggs and Morgan, P.A., Minneapolis, Minnesota, for respondent.

Mark A. Karney, Minneapolis, Minnesota, for appellants.

Sharon L. Van Dyck, Van Dyck Law Firm, PLLC, St. Louis Park, Minnesota, for amicus curiae Minnesota Association for Justice.

Dale O. Thornsjo, Matthew M. Johnson, Johnson & Condon, P.A., Minneapolis, Minnesota, for amicus curiae The Insurance Federation of Minnesota.

## OPINION

DIETZEN, Justice.

Appellants Bruce and Cindy Thompson (Thompsons) filed a claim for basic economic loss benefits against their insurer, respondent Western National Insurance Company (Western National), arising out of injuries they sustained in an automobile accident. Western National paid some benefits to the Thompsons, and then a dispute arose over the Thompsons' obligation to attend examinations under oath requested by Western National. The Thompsons filed for no-fault arbitration, and Western National moved to stay the arbitrations and brought a declaratory judgment action in district court. The arbitrators entered awards in favor of the Thompsons.

In Hennepin County District Court, Western National moved for summary judgment and the Thompsons moved to confirm their awards. The district court denied Western National's motion and confirmed the awards, concluding that the reasonableness of the Thompsons' refusal to attend the examinations under oath was a fact question for the arbitrator. The court of appeals reversed, concluding that it was a question of law for the court. Because we conclude that the reasonableness of a request for or refusal to attend an examination under oath is a question of fact for the arbitrator, and the arbitrators implicitly decided the Thompsons' refusal was reasonable, we reverse the decision of the court of appeals and reinstate the arbitration awards.

The Thompsons sustained injuries as a result of an automobile accident that occurred in September 2007. They notified Western National of the accident and submitted claims for basic economic loss benefits. Pursuant to the claims, Western National paid $7,111.40 to Bruce Thompson and $7,196.50 to Cindy Thompson for their medical care arising from the accident.

Subsequently, Western National received information that Cindy Thompson worked for her treating chiropractor. As a result, Western National sent a letter to the Thompsons scheduling their examinations under oath pursuant to the insurance policy language, which stated that an insured must submit to an examination un-

der oath "as often as [Western National] reasonably require[s]." The Thompsons objected and stated they would not attend the "depositions," arguing that the examinations were not warranted because they had already cooperated with the investigation by providing requested information and Western National had already paid benefits.

The parties disputed whether the Thompsons had an obligation under the policy to attend the examinations under oath. The Thompsons argued that Western National's request for formal examinations under oath was unreasonable and they were not required to attend. Western National argued that the insurance policy mandated that the Thompsons submit to these examinations under oath. Based on the Thompsons' refusal to submit to examinations under oath, Western National concluded the Thompsons were in breach of their insurance policy and denied all outstanding claims for medical expense benefits.[1]

The Thompsons filed no-fault arbitration petitions with the American Arbitration Association seeking the recovery of medical expenses. Western National responded that the Thompsons were in breach of their policy and therefore it had denied the outstanding claims. Western National asserted that the grounds for denial raised questions of law beyond the jurisdiction of the arbitrators. Consequently, Western National filed a declaratory judgment action in Hennepin County District Court, alleging that the Thompsons were in breach of the insurance policy for refusing to submit to the examinations under oath. Western National also requested the arbitrations be stayed until the district court could rule on the issue. The arbitrators

denied Western National's request for a stay. One of the arbitrators reasoned that "[t]he issue of reasonableness presents a fact issue rather than a legal issue," and "it is entirely appropriate for an arbitrator to determine the reasonableness" of an insured-claimant's refusal to comply with an insurer's request. Subsequently, the arbitrations went forward and the arbitrators filed separate awards of $9,430 for Bruce Thompson and $9,824 for Cindy Thompson.

In district court, Western National moved for summary judgment on its breach of contract claim and the Thompsons moved to confirm their awards. The district court denied Western National's motion and confirmed the awards, concluding that Western National's request for examinations under oath and the Thompsons' refusal to submit to the examinations "represent[ ] an issue of reasonableness, which is a fact issue to be determined by the arbitrator," and not the courts.

The court of appeals reversed, concluding that the refusal to submit to examinations under oath was a question of law for the courts, and not subject to arbitration. *W. Nat'l Ins. Co. v. Thompson*, 781 N.W.2d 412, 416–17 (Minn.App.2010). The court of appeals reasoned that the Thompsons "breached their insurance contract as a matter of law" by providing no legal excuse for their failure to comply with their contractual duty to submit to the examinations under oath. *Id.* The court of appeals concluded that the district court erred in confirming the arbitration awards and in denying Western National's motion for summary judgment. *Id.*

## I.

■ The Thompsons assert that under the Minnesota No–Fault Automobile In-

---

1. Western National paid the Thompsons' previous claims of $14,307.90 and these payments are not in dispute. Subsequently, the

Thompsons submitted additional claims, and those pending claims are the subject of this dispute.

surance Act (No–Fault Act), Minn.Stat. §§ 65B.41–.71 (2010), the reasonableness of a request for or refusal to attend an examination under oath is a question of fact for the arbitrator and not for the courts. Western National responds that the Thompsons' refusal to submit to examinations under oath as required by the insurance policy raises a coverage dispute, which is a question of law for the courts.

■■■ The interpretation and construction of the No–Fault Act and of the Thompsons' insurance policy are legal issues that we review de novo. *W. Bend Mut. Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693, 698 (Minn.2009) (reviewing the interpretation of an insurance policy provision as a question of law); *Am. Nat'l Prop. & Cas. Co. v. Loren*, 597 N.W.2d 291, 292 (Minn.1999) (reviewing the construction of a portion of the No–Fault Act as a question of law). The goal of statutory interpretation is to "ascertain and effectuate the intention of the legislature." *W. Bend*, 776 N.W.2d at 698 (quoting Minn. Stat. § 645.16 (2010)). Words and phrases in a statute are construed "according to their plain and ordinary meaning." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). When a statute is unambiguous, its plain meaning is given effect. *W. Bend*, 776 N.W.2d at 698.

The threshold issue is whether the arbitrators exceeded the scope of their authority by deciding an issue of law not properly subject to arbitration. To answer this question we must examine the relevant provisions of the No–Fault Act and applicable case law, and then apply the law to the case before us.

■■ The No–Fault Act provides, among other things, that every person suffering a loss arising out of an accident in this state involving a motor vehicle has a right to basic economic loss benefits, also known as no-fault benefits. Minn.Stat. § 65B.46,

subd. 1. The No–Fault Act is designed to simplify and ease the burden of litigation, and imposes certain obligations on both the insured-claimant and the insurer in order to meet that goal. *Neal v. State Farm Mut. Ins. Co.*, 529 N.W.2d 330, 333 (Minn.1995) (citing Minn.Stat. § 65B.42, subd. 4). Essentially, the insurer is mandated to pay benefits promptly, Minn.Stat. § 65B.54, subd. 1, and the insured-claimant is obligated to cooperate in the investigation of the claim, Minn.Stat. § 65B.56, subd. 1.

■■ The No–Fault Act provides for mandatory arbitration of all claims of $10,000 or less. Minn.Stat. § 65B.525, subd. 1. Specifically, it provides:

> Except as otherwise provided in section 72A.327, the Supreme Court and the several courts of general trial jurisdiction of this state shall by rules of court or other constitutionally allowable device, provide for the mandatory submission to binding arbitration of all cases at issue where the claim at the commencement of arbitration is in an amount of $10,000 or less against any insured's reparation obligor for no-fault benefits or comprehensive or collision damage coverage.

*Id.* In the no-fault context, arbitration is appropriate as a "speedy, informal and relatively inexpensive procedure for resolving controversies." *Weaver v. State Farm Ins. Cos.*, 609 N.W.2d 878, 884 (Minn.2000). The No–Fault Arbitration Rules approved by this court encourage the "voluntary exchange of information" and discourage formal discovery. Minn. R. No–Fault Arb. 12. It is undisputed that the Thompsons' no-fault claims are subject to binding arbitration.

■■ Western National's insurance policy requires that the insured must submit to an examination under oath "as often as

[Western National] reasonably require[s]." The Thompsons contend that section 65B.56, subdivision 1, limits that obligation. Generally, an insurer's liability is governed by the contract between the parties as long as policy provisions do not contravene applicable statutes. *Loren*, 597 N.W.2d at 292 (citing Minn.Stat. §§ 65B.41–.71). Therefore, even though the policy at issue here requires submission to an examination under oath as often as Western National "reasonably require[s]," we turn to the language of the statute to determine if a conflict exists or if additional limits are imposed.

■ Section 65B.56, subdivision 1, requires that any person claiming injury benefits under a plan of reparation security shall, upon request of the automobile insurer, submit to a physical examination by a physician selected by the insurer "as may reasonably be required." Previously, we have enforced the right of an insurance company to require an insured-claimant to attend an independent medical examination. *See Neal*, 529 N.W.2d at 333. Importantly, subdivision 1 goes on to impose upon the insured-claimant a duty to do "all things reasonably necessary to enable the obligor to obtain medical reports and other needed information to assist in determining the nature and extent of the injured person's injuries and loss, and the medical treatment received." Minn.Stat. § 65B.56, subd. 1. The purpose of an examination under oath is to assist the insurer in determining the facts of the accident, and the "nature and extent of the injured person's injuries and loss, and the medical treatment received." *Id.; accord Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81, 94–95, 3 S.Ct. 507, 28 L.Ed. 76 (1884) (discussing the purpose of an examination under oath as "enabl[ing] the company to possess itself of all knowledge ... to enable them to decide upon their obligations"). It logi-cally follows that an examination under oath is permitted under the statute.

We conclude that section 65B.56, subdivision 1, permits the insurer to require the insured-claimant to attend an examination under oath, provided it is "reasonably necessary" for the insurer to obtain medical reports and other needed information to determine the nature and extent of the insured-claimant's injuries and loss, and the medical treatment received.

## II.

■ Western National next argues that satisfaction of the policy provision requiring an examination under oath was a condition precedent to any obligation of Western National to pay the Thompsons' claims. Thus, it contends that the reasonableness of the refusal to submit to an examination under oath raises a question of coverage, which is a question of law for the courts.

■ Generally, a coverage dispute presents a question of law for the courts, not the arbitrators, and should be determined by the district court prior to any arbitration on the merits of the claim. *See Costello v. Aetna Cas. & Sur. Co.,* 472 N.W.2d 324, 326 (Minn.1991) ("The court, however, must make a finding of coverage before Costello is entitled to invoke his right to arbitration."); *see also Johnson v. Am. Fam. Mut. Ins. Co.,* 426 N.W.2d 419, 421 (Minn.1988) (concluding that an arbitration panel exceeds the scope of its authority when it decides a coverage issue). The distinction between coverage disputes for the court and other types of disputes for the arbitrators is that questions that go "not to the merits of a claim but to whether a claim exists" should be decided by the district court. *Myers v. State Farm Mut. Auto. Ins. Co.,* 336 N.W.2d 288, 290–91 (Minn.1983) (concluding that the policy definition of an underinsured motor vehicle

was valid and did not extend to vehicle in question); *see also U.S. Fid. & Guar. Co. v. Fruchtman*, 263 N.W.2d 66, 71 (Minn. 1978) (concluding that the insurance policy required physical contact with a hit-and-run vehicle as a precondition to uninsured motorist coverage).

The dispute in this case is not whether a claim for no-fault benefits exists, but rather the reasonableness of the request for examinations under oath and the Thompsons' refusal to comply with Western National's request. These issues go to the merits of the claim, not the existence of a claim. Therefore, this dispute is not properly characterized as a coverage dispute.

### III.

■ Finally, we address the more specific question of whether the reasonableness of Western National's request for examinations under oath and the Thompsons' refusal to comply with that request is a question of fact or law. The Thompsons argue that the reasonableness of the request and their subsequent refusal to submit to examinations under oath are questions of fact, and as such the arbitrators' determinations are binding.

We have approved rules for no-fault cases involving mandatory arbitration under Minn.Stat. § 65B.525. One of the rules provides that arbitrators may "grant any remedy or relief that the arbitrator deems just and equitable." Minn. R. No–Fault Arb. 32. But we have limited the role of no-fault arbitrators to deciding questions of fact, and have stated "[t]he limitation on the final authority of [no-fault] arbitrators is based on the perceived need for consistency in interpretation of the No–Fault Act." *Weaver*, 609 N.W.2d at 882. We recognized, however, that in order to award benefits, arbitrators must apply the law to the facts, and therefore we review de novo the arbitrators' legal

determinations that are necessary to award, suspend, or deny benefits. *Id.*

Previously, we have addressed the fact-finding authority of no-fault arbitrators. *Weaver v. State Farm Ins. Cos.*, 609 N.W.2d 878 (Minn.2000); *Neal v. State Farm Mut. Ins. Co.*, 529 N.W.2d 330 (Minn.1995). In *Neal*, we considered whether an insured's no-fault benefits might be suspended for the unreasonable failure to attend an independent medical examination (IME). 529 N.W.2d at 332. When the insured failed to attend an IME and did not provide any reason for not attending, the insurer suspended payment of no-fault benefits. *Id.* at 331. The arbitrator concluded the refusal was unreasonable, but that section 65B.56, subdivision 1, contained no provision for the cessation of no-fault benefits for the unreasonable failure to attend an IME. 529 N.W.2d at 331. On appeal, we concluded that the No–Fault Act allowed an insurer to suspend benefits pending an unreasonably refused IME. *Id.* at 333. We reasoned that the arbitrator's finding that Neal's unexplained failure to attend the IME was unreasonable is within his fact-finding authority, but the consequence of that failure is a question of law because it requires interpretation of either the statute or the insurance contract or both. *Id.* at 331–32.

■ In *Weaver*, we considered whether a no-fault arbitrator has the power to award, suspend, or deny benefits when the insured has refused to attend an IME until his or her no-fault benefits claims are paid in full. 609 N.W.2d at 882. At issue was whether the refusal to submit to an IME based upon an insurer's nonpayment of a no-fault claim presented an issue of fact for the arbitrator or law for the courts. *Id.* We held that an arbitrator has the authority, on a case-by-case basis, to award, suspend, or deny no-fault benefits based on the arbitrator's factual determi-

nation of the reasonableness of the request for or refusal to attend the IME. *Id.* at 886. We reasoned that reasonableness has traditionally been considered a fact issue that is for the arbitrator to decide. *Id.* at 883. Moreover, the legal duty to attend an IME pursuant to the No–Fault Act is a question of reasonableness. *Id.* at 884. Therefore, the arbitrator should address the reasonableness of the decision to refuse to attend an IME. *Id.*

 Applying the principles in *Neal* and *Weaver*, we conclude that whether a request for an examination under oath and the refusal of such a request are reasonable are questions of fact for the arbitrator.[2] The court, however, reviews de novo any legal conclusions made by the arbitrators based on these factual determinations. Unfortunately, in this case, the arbitrators' awards did not explicitly address whether the request for examinations and the refusal were reasonable.[3] When the arbitration awards were filed, however, the arbitrators had the question before them of whether the Thompsons satisfied their obligation under the insurance policy and section 65B.56, subdivision 1, to do "all things reasonably necessary" to enable the insurer to determine the nature and extent of the claim. Thus, the arbitrators made an implicit factual determination that the refusal was reasonable, and that determination is final.

In summary, we conclude that a request for and refusal to attend an examination

under oath are governed by the policy language and section 65B.56, subdivision 1, which imposes a duty of reasonableness on both the insured-claimant and the insurer. Because the arbitrators in this case implicitly found that the Thompsons' refusal to submit to the examinations under oath was reasonable, we reverse the decision of the court of appeals and reinstate the decision of the district court confirming the arbitration awards.

Reversed.

MEYER, J., took no part in the consideration or decision of this case.

ANDERSON, G. BARRY, Justice (concurring).

I agree that an insurer's request for an examination under oath is subject to a reasonableness requirement under the Minnesota No–Fault Automobile Insurance Act (No–Fault Act). *See* Minn.Stat. § 65B.56, subd. 1 (2010). And, given the facts of this case, I concur in the result reached by the majority. Cindy Thompson signed her application for benefits from Western National Insurance Co. on October 22, 2007, less than one month after the collision that gave rise to the claims at issue here. On her application for benefits, Thompson identified her employer as "Kenwood Chiropractic Arts" and her treating doctor as "Kenwood." On his application for benefits, signed October 15, 2007, Bruce Thompson identified

2. The concurrence expresses concern that arbitrators may apply differing standards in resolving disputes over whether a request for an examination under oath is reasonable in a given case. It is difficult to predict whether this concern is valid. We observe, however, that if differing standards of reasonableness become a problem, the court has the authority pursuant to Minn.Stat. § 65B.525 (2010) to enact new arbitration rules to provide guidance to the arbitrators.

3. Arbitrators are not required to give reasons for their decisions. *See Weaver,* 609 N.W.2d at 885 n. 4. To facilitate judicial review, we urge arbitrators to state whether their decisions in no-fault arbitrations are based on factual determinations or legal conclusions. When arbitrators fail to give reasons for their decisions, they run the risk that they will be compelled to clarify their awards. *See* Minn. Stat. § 572.16 (2010).

his treating doctor as "Kenwood Chiropractic Arts." Western National began making payments under the Thompsons' no-fault policy in December 2007 and informed the Thompsons on January 22, 2008, that it was going to require examinations under oath.[1] Western National claims in its brief to us that it sought to examine the Thompsons because it received information *after* it made payments about Cindy Thompson's employment, and about treatment the Thompsons were receiving at the time of the collision. The timing set out by Western National in its brief is inconsistent with the disclosures on and dates of the Thompsons' applications for benefits. Given the disclosures by the Thompsons, I am disinclined to rescue Western National from the failure to immediately request an examination under oath. Put another way, under the facts and circumstances of this case, the arbitrators' implicit factual determination—that it was reasonable for the Thompsons to refuse to submit to the examination—appears sound.

But I write separately to express concerns about how examinations under oath are treated under the No–Fault Act, at least in the arbitration context, and also to note that our opinion today may not be the final word on how requests for examinations under oath are received in the future.

I begin with the observation that submitting to an examination under oath is among the actions that an injured person shall do when "reasonably necessary" as the insurer pursues "medical reports and other needed information to assist in determining the nature and extent of the injured person's injuries and loss, and the medical treatment received." Minn.Stat. § 65B.56, subd. 1. In my view, examinations under oath serve the purposes of the No–Fault Act as defined by the Legislature, including "to correct imbalances and abuses in the operation of the automobile accident tort liability system" and "to require medical examination and disclosure." *See* Minn.Stat. § 65B.42 (2010). And I note that our rules for no-fault automobile insurance arbitrations encourage the voluntary exchange of information and discourage formal discovery. *See* Minn. R. No–Fault Arb. 12. But I am not willing to assume that, in most cases, a more formal process to secure information will be un-

---

1. As discussed in this concurrence, examinations under oath have a long history in our jurisprudence, in federal courts, and elsewhere. Examinations under oath are an important tool in dealing with insurance fraud, as amicus curiae Insurance Federation of Minnesota notes. *See* Michael A. Hamilton, *Property Insurance: A Call for Increased Use of Examinations Under Oath for the Detection and Deterrence of Fraudulent Insurance Claims*, 97 Dick. L.Rev. 329, 331–32 (1992–1993) (describing examinations under oath as a contractual option of insurers to investigate claims); 13 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 196 (3d ed.2005) (discussing insurers' rights to investigate claims generally); *id.* §§ 196.1, .6–.31 (discussing examinations under oath). *See also id.* § 196.3 ("[T]he purpose of a cooperation clause is to enable the insurer to obtain all knowledge and facts concerning cause of loss involved while information is fresh in order to protect itself from fraudulent and false claims."). *Cf. id.* ("Insurance policies commonly provide for an examination under oath.... In keeping with firm statistical evidence that insurers are faced with increasing numbers of fraudulent and padded claims, insurers tend to insist more frequently upon the production of supporting documentation."). Minnesota law, in fact, *requires* sworn statements in fire loss claims. *See* Minn.Stat. § 65A.01, subd. 3 (2010).

In their brief to our court, for reasons that are not explained, the Thompsons persist in mischaracterizing examinations under oath as "depositions" and "formal depositions." They are nothing of the sort. Notwithstanding the formal nature of this investigatory tool, an examination under oath is exactly as described—an examination under oath.

necessary. Concern about fraudulent no-fault claims might very well lead an insurance carrier to reasonably require examinations under oath either universally or perhaps with respect to certain types of claims. The record before us is wholly inadequate to even guess how and when examinations might be reasonably required in a more global context.

Examinations under oath are not unique to the No–Fault Act, and I am concerned that the arbitrators' implicit factual determination of reasonableness in this case was only that—implicit. Because arbitrators' factual determinations are final, an unintended result of this case is that arbitrators may be more likely to determine, without explanation, that an insured's refusal to submit to an examination under oath is reasonable. This, in turn, effectively would deprive insurers of a valuable investigatory tool that the United States Supreme Court recognized more than 125 years ago protected insurers from false claims. *See Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 94–95, 3 S.Ct. 507, 28 L.Ed. 76 (1884). In Minnesota, we noted with approval, more than 110 years ago, the practice of insurers seeking notarized statements from claimants. *See Hamberg v. St. Paul Fire & Marine Ins. Co.*, 68 Minn. 335, 337, 71 N.W. 388, 388 (Minn. 1897) (discussing admissibility of two written examinations taken pursuant to insurance policy and signed by policyholder before a notary). *See also* 13 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 196:11 (3d ed. 2005) ("The insurer is entitled to conduct a searching examination, though all questions should be confined to matters relevant and material to the loss."). Although not before us in the present dispute, it is not self-evident to me that a blanket carrier practice of requiring an examination under oath would be per se unreasonable, given the goals of the No–Fault Act. Certainly, the Act does not prohibit such a practice.

As Western National correctly observes in its brief to our court, inconsistencies in the treatment of requests for examination under oath likely will develop because one arbitrator may adopt the position that one examination under oath is always reasonable while another arbitrator may decide that no examination under oath is ever reasonable. As some Minnesota practitioners noted presciently a decade ago, the lack of guidance concerning what is reasonable and what is not could undermine the goals of consistency and impartiality in the no-fault automobile insurance system and "intensify the conflicts over the arbitrator selection process." *See* Theodore J. Smetak et al., *Minnesota Motor Vehicle Insurance Manual* 170 (3d ed.2000).

> There is no guarantee that arbitrators will reach consistent factual conclusions of reasonableness on the same set of facts.... Indeed, there is already the perception that the identity of the no-fault arbitrator is outcome determinative which has fueled a fierce debate and protracted litigation in recent years over the arbitrator selection process. That debate may now continue and intensify.

*Id. See also* Karen Cote & Tammy M. Reno, *No–Fault Claims Handling and Arbitration, in Minn. Motor Vehicle Accident Deskbook* 24–16 (Michael R. Fargione & Paul F. McEllistrem, eds., 4th ed. 2009) ("What seems clear is that in order for the [no-fault automobile insurance] arbitration system to work, both sides must believe the system is fair.").

The Legislature defined the scope of the No–Fault Act and, in section 65B.56, provided that requests for information by insurers and cooperation by insureds must be reasonable. In section 65B.525, the Legislature assigned to our court the task of adopting the rules that govern no-fault

automobile arbitrations. If the concerns expressed here come to pass, either legislative action[2] or further clarification from our court may be necessary. Among the matters that may require further attention are not only the obvious issues raised by the present dispute, i.e., the reasonableness of an insurer's request for an examination under oath, but also more fundamental questions, including consideration of a more expansive standard of review of no-fault arbitration awards. We do not need to address those fundamental questions to decide this case, and so it is sufficient to reverse the court of appeals and leave the fundamental concerns for another day—and a better record.

2. Iowa, for example, includes among the statutory grounds on which a reviewing court may vacate an arbitration award that "[s]ubstantial evidence on the record as a whole does not support the award." Iowa Code § 679A.12(1)(f) (2011). The Iowa Supreme Court interprets the statute to allow limited factual review. " '[T]he ultimate question is whether [the evidence] supports the finding actually made, not whether the evidence would support a different finding.' " State v. Dohlman, 725 N.W.2d 428, 430 (Iowa 2006) (quoting Fischer v. City of Sioux City, 695 N.W.2d 31, 34 (Iowa 2005)).